# MATTER OF MA

## In Visa Petition Proceedings

### A-26750556

*Decided by Board September 23, 1991*

(1) Because of the potential for fraud in visa petition proceedings where Chinese notarial birth certificates are issued a period of time after the subject's birth, any and all supporting evidence should accompany such certificates as evidence of the claimed relationship.

(2) Where a petitioner files a visa petition on behalf of a claimed relative whom she has previously failed to identify as such on documents that require the identification of such relatives, the visa petition will be approved only if it is supported by clear and convincing evidence of the bona fide nature of the relationship.

ON BEHALF OF PETITIONER:
Benjamin Gim, Esquire
Gim & Wong, P.C.
217 Park Row
New York, New York 10038

ON BEHALF OF SERVICE:
Robert Solmonson
District Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The United States citizen petitioner applied for preference status for the beneficiary as her married son under section 203(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(4) (1982). In a decision dated June 27, 1986, the Immigration and Naturalization Service Regional Adjudications Center ("RAC") director denied the petition on the ground that the petitioner failed to establish that the beneficiary is her son. The petitioner has appealed from that decision. The appeal will be dismissed.

The petitioner is a 66-year-old native of China who became a citizen of the United States by naturalization on March 20, 1956. On April 11, 1986, she filed a visa petition on behalf of the beneficiary to accord him preference status as a married son of a United States citizen under section 203(a)(4) of the Act. The beneficiary is a 46-year-old native and citizen of China.

In an affidavit dated February 26, 1986, the petitioner explains why she did not reveal the fact that the beneficiary is her son until she filed

a visa petition on his behalf. According to the petitioner, she married her first husband in January of 1944, in China. The beneficiary was born on February 2, 1945. The petitioner's husband died on February 20, 1946, leaving her in dire straits as a widow with a child. In August of 1947, her friends introduced her to a native of China who had become a citizen of the United States. He had returned to China to look for a wife. She knew that Chinese men were old fashioned and would not want to marry a widow with a child, so she did not tell this man that she had been married and had a child. She married the United States citizen in Hong Kong on October 22, 1947. She left her son, the beneficiary, with her former spouse's mother and moved to the United States with her new husband. She entered the United States as the spouse of a United States citizen on November 19, 1947. She did not reveal her former marriage when she applied for a marriage certificate in Hong Kong or later when she applied for naturalization in the United States. She did, however, assist in supporting the beneficiary by sending money to him through her brother.

The petitioner supported her statements with an affidavit from her United States citizen brother dated March 20, 1986. He confirms the petitioner's claim that she was married previously and that her previous husband died in February of 1946. He states that he saw the beneficiary right after the child's birth. In addition, he confirms the petitioner's claim that she passed money through him to the beneficiary to avoid compromising her second marriage.

The petitioner also submitted an affidavit from a friend which is dated March 20, 1986. This affiant is a citizen of the United States who states that she lived in a nearby village when the petitioner was living in China. She declares that she has personal knowledge that the petitioner was married previously and that the beneficiary is her child.

As additional support, the petitioner submitted a money order dated April 24, 1974, and a number of documents which were apparently used to transfer funds to the Bank of China. The bank documents are not properly translated. See generally 8 C.F.R. § 103.2(b)(1) (1991) for the requirements in this regard.

The only other document that we will mention is a Chinese notarial certificate which was executed in China on November 18, 1985. It certifies that the beneficiary is the petitioner's son. It was issued on the basis of an application from the beneficiary.

In his decision, the RAC director notes that the petitioner did not previously declare that the beneficiary is her son. He expresses suspicion over the fact that now, many years after her naturalization, she is trying to convince the Service that the beneficiary is her son. He states further that he has reviewed the documents the petitioner submitted in support of her petition, and he is not convinced that the

beneficiary actually is her son. Accordingly, he denies the petition on the ground that the petitioner has failed to meet her burden of establishing the claimed relationship with the beneficiary.

In an appeal brief, the petitioner contends that she has adequately explained why she did not claim the beneficiary as her son previously and that she has established by incontrovertible evidence that the beneficiary is her son. For instance, she submitted a Chinese notarial certificate which declares that the beneficiary is her son. She points out that the Board held in *Matter of May*, 18 I&N Dec. 381, 383 (BIA 1983), that Chinese notarial certificates are "generally reliable" because they are issued on the basis of primary documentation or on the basis of an investigation by the notarial office staff. Moreover, the Board went even further in *Matter of Chu*, 19 I&N Dec. 81 (BIA 1984), by holding that a notarial certificate is an essential element of proof for establishing the existence of a post-1950 adoption in the People's Republic of China.

In addition to claiming that the RAC director failed to give adequate weight to the evidence she submitted, the petitioner contends that he failed to articulate in any comprehensible manner his reasoning or the basis for the denial of the visa petition. According to the petitioner, the RAC director seems to have based his decision solely on an ad hoc mandatory presumption theory which presumes that if a person does not claim a prior marriage or a child from that marriage, then that marriage could not have existed in fact, nor could such a person possibly under any circumstances have had a child by that marriage. The petitioner asserts that this presumption flies in the face of what history, common sense, and logic tells us about the human condition. She further states that it is not uncommon for spouses to deceive each other by not recording previous marriages on official records or by concealing children.

The petitioner concludes that she has given a reasonable, rational explanation for her failure to claim previously that the beneficiary is her son. She has documented her explanation by presenting corroborating affidavits from her brother and a friend, as well as a reliable, official document issued by the Chinese Government. Consequently, she claims she has met her burden of proof. She contends that the burden of proof thus shifted to the Government to show why the visa petition should nevertheless be denied, and that the Government has not produced substantial evidence to meet that burden of proof. She concludes that her visa petition should therefore be approved.

Alternatively, the petitioner contends that the RAC director's decision should be declared void because he failed to comply with the requirements of 8 C.F.R. § 103.2(b)(2) (1986). That regulation provides that if a decision will be adverse to the petitioner on the basis

396

of derogatory evidence of which the petitioner is unaware, the petitioner shall be advised thereof and offered an opportunity to rebut it before a decision is rendered. We note in this regard that the petitioner has presented new documentary evidence with her appeal brief.

In visa petition proceedings, the burden of proof is on the petitioner to establish that the beneficiary is eligible for the benefit sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). In the present case, the RAC director has concluded that the petitioner failed to meet that burden of proof. We agree.

The petitioner concedes that on her entry as a nonquota immigrant in 1947, she "did not claim on her immigration records that she was married once before; that her first husband had died; and that she had a son by this marriage by the name of Ma Peng Zhi." She also admits that when she was naturalized as a citizen of the United States, she did not report her previous marriage. We note further that she became able to confer preference status on a married son or daughter under section 203(a)(4) of the Act when she was naturalized on March 20, 1956, yet she did not file a visa petition on behalf of the beneficiary until April 11, 1986, some 30 years later. On the other hand, she has provided an explanation for her alleged decision not to tell her second husband that she had a child from a previous marriage. Moreover, in addition to affidavits, she has submitted a Chinese notarial certificate that reflects that the beneficiary is her son. We note in this regard that notaries in China do not perform the same function as their American counterparts. Chinese notaries affix their signature and office seal to certificates which attest to the probity of claims made by the applicants. There is no manner of oath taking involved, but the notary is empowered to issue a certificate only if he concludes that the alleged facts are true. Consequently, while such certificates are not conclusive proof of the facts recited because of the potential for fraud or error in their issuance, they are generally reliable and should be accorded substantial weight as evidence of a claimed relationship. *Matter of May, supra*. Nevertheless, notarial certificates should be accompanied by any and all supporting evidence that the petitioner may be able to produce. That is particularly important in the present case. The certificate was issued 40 years after the birth of the beneficiary. The opportunity for fraud is a major concern in such situations. Compare *Matter of Serna*, 16 I&N Dec. 643 (BIA 1978), in which the probative value of delayed birth certificates is discussed. Ultimately, each case must be decided on its own facts with regard to the sufficiency of the evidence provided. *Matter of May, supra*. In the present case, the certificate is accompanied by affidavits from the petitioner, her brother, and a friend.

Where a petitioner files a visa petition on behalf of a claimed relative whom she has previously failed to identify as such on documents that require the identification of such relatives, the visa petition will be approved only if it is supported by clear and convincing evidence of the bona fide nature of the relationship. Here, the petitioner has conceded that she did not list the beneficiary as her son in the documents she filed in 1947 when she immigrated or in 1956 when she was naturalized. In fact, no such claim was made until some 30 years after she had become a United States citizen. We emphasize further that the notarial certificate she has relied upon must be evaluated in light of the potential for fraud that is present when birth is certified after such a long period of time. In addition, further doubt is cast on the reliability of the certificate by the fact that it was issued on the basis of information which had been provided by the beneficiary. Furthermore, it appears unlikely that the person who issued the certificate had evidence before him that has not been presented by the petitioner in these proceedings. Consequently, we are not persuaded that the certificate is reliable evidence of the claimed relationship in the circumstances of this case. Similarly, those circumstances also diminish the probative value of the other evidence the petitioner has submitted. We conclude that the evidence the petitioner has submitted to establish that the beneficiary is her son is not clear and convincing and, therefore, that she has failed to meet her burden of proof. *See Matter of Brantigan, supra.*

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.