# In re Tanessia Amelia PAGAN, Beneficiary

## File A73 673 764 - Vermont Service Center

*Decided March 3, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Although the paternity of a beneficiary must be established in order to qualify as a "legitimated" child under section 101(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(C) (1994), the child's father need not prove that they have any relationship other than a purely biological one.

(2) As blood tests are the sole manner of proving a claimed biological relationship expressly mentioned in the federal regulations that do not require any previous personal relationship between a father and his child, when primary evidence of paternity in the form of a birth certificate is unavailable or insufficient, the Immigration and Naturalization Service should, in its request for additional evidence, advise a petitioner of the alternative of submitting the results of blood tests if affidavits and historical secondary evidence are not available.

Pro se

Thomas K., Ware, Service Center Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members.

MATHON, Board Member:

In a decision dated January 14, 1997, the Immigration and Naturalization Service Regional Service Center ("RSC") director in Vermont denied the visa petition filed by the petitioner to accord the beneficiary preference status as his child pursuant to section 203(a)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2)(A) (1994). The petitioner has appealed from that decision. The record will be remanded to the RSC director.

## I. ISSUE

There are cases in which a petitioner *only* needs to establish paternity in order to demonstrate that a beneficiary of a visa petition qualifies as his "legitimated" child under section 101(b)(1)(C) of the Act, 8 U.S.C. § 1101(b)(1)(C) (1994), but in which primary evidence of paternity in the form of a birth certificate is unavailable or insufficient. The issue before the Board is whether the Immigration and Naturalization Service must, in its *initial* request for any available secondary evidence in such cases, also advise the petitioner of the alternative of submitting blood test results to establish paternity if secondary evidence is not available.

## II. BACKGROUND

The petitioner is a 44-year-old native and citizen of Jamaica who became a lawful permanent resident on September 8, 1989. On March 13, 1996, the petitioner filed the instant visa petition on behalf of the 20-year-old beneficiary who is also a native and citizen of Jamaica. The petitioner claims that the beneficiary was born out of wedlock on June 10, 1978, to himself and a woman he never married. In support of his visa petition, the petitioner submitted a copy of the beneficiary's birth certificate, which was registered by the beneficiary's mother in August 1978. The petitioner acknowledged the beneficiary as his daughter by having his name officially entered on her birth certificate on September 25, 1995.

On September 14, 1996, the Service notified the petitioner that because his name was added to the beneficiary's birth certificate 17 years after her birth, the birth certificate would not be given much evidentiary weight in establishing the claimed relationship. The Service informed the petitioner that, in order to establish the claimed relationship, he should submit "the oldest available evidence," which could include, but was not limited to, a baptismal certificate or other religious documents, early school records, and medical records, such as hospital birth records, all of which had to contain the names of the petitioner and the beneficiary. The petitioner was advised to submit affidavits as well.

The petitioner did not respond to the request, and the RSC director subsequently denied the visa petition. The petitioner appealed the decision. The Service submitted a brief in opposition to the appeal, arguing that the RSC director's decision should be upheld because the petitioner has failed to meet his burden of proving that the beneficiary is his child.

## III. ANALYSIS

In visa petition proceedings, the burden is on the petitioner to establish by a preponderance of the evidence that the beneficiary qualifies for the

benefit sought under the immigration laws. *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965). For the beneficiary to qualify for preference status under section 203(a)(2)(A) of the Act, the petitioner must establish that the beneficiary meets the definition of a "child," as set forth in section 101(b)(1) of the Act. According to section 101(b)(1)(C) of the Act, a "child" includes "an unmarried person under twenty-one years of age who is . . . a child legitimated under the law of the child's residence or domicile . . . if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation." The statute also contains the inherent requirement that the petitioner establish that the beneficiary is his biological child. *Matter of Bueno*, 21 I&N Dec. 1029, (BIA 1997). However, there is no requirement under section 101(b)(1)(C) that there have been a "bonafide parent-child relationship" between the father and the legitimated child. *Compare* section 101(b)(1)(C) of the Act *with* section 101(b)(1)(D) of the Act.

The beneficiary's birth certificate clearly demonstrates that she is under 21 years of age. In addition, the RSC director found, and we agree, that the beneficiary was legitimated according to the laws of her residence or domicile prior to reaching the age of 18, as evidenced by the petitioner's amendment of the beneficiary's birth certificate on September 25, 1995, to include his name as the beneficiary's father.[1] *See* Vol.9, Foreign Affairs Manual, Part IV, Appendix C, "Jamaica" ("FAM") (indicating that a father can amend his child's birth certificate to include his name as the father, resulting in the legitimation of the child under the laws of Jamaica). We also find that the petitioner has met the legal custody requirement of section 101(b)(1)(C) of the Act, as interpreted in *Matter of Rivers*, 17 I&N Dec. 419 (BIA 1980) (holding that a natural father is presumed to have legal custody of his child at the time of legitimation in the absence of affirmative evidence indicating otherwise). The determinative issue, then, is whether the petitioner has established his paternity of the beneficiary.

As mentioned earlier, the petitioner submitted an amended copy of the beneficiary's birth certificate to support his claim of paternity. We recently held in *Matter of Bueno*, *supra,* that a late registered birth certificate does not necessarily constitute conclusive evidence of paternity, even if it is unrebutted by contradictory evidence. It must instead be evaluated in light of the other evidence of record and the circumstances of the case. *Id.* That hold-

---

[1]In *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981), we held that the Jamaican Status of Children Act of 1976 had, as of its effective date of October 19, 1976, eliminated all distinctions between children born in and out of wedlock. Thus, a child born out of wedlock who was under 18 years of age on October 19, 1976, or born on or after that date, may qualify as the legitimated child of his or her father, if the requirements for acknowledgment under Jamaican law are met before the child's 18th birthday. *Id.*

ing logically extends to a case involving a birth certificate that was *amended* after its initial timely registration, if the facts that were added are material to the relationship the petitioner is attempting to prove.

In the instant case, the beneficiary's birth certificate was amended to include the name of the petitioner as the beneficiary's father 17 years after her birth and approximately 6 months prior to the filing of this visa petition. The amendment apparently was based solely on a notarized declaration of paternity by the petitioner and the beneficiary's biological mother. These circumstances raise meaningful questions regarding the truth of the facts asserted in the birth certificate. *See* FAM, *supra; see also Matter of Bueno, supra*. We therefore agree with the RSC director's determination that the birth certificate alone was not sufficient to establish that the petitioner is the biological father of the beneficiary.

The federal regulations provide that if primary evidence of the claimed relationship is not available, which in this case would be a timely amended birth certificate showing the name of the petitioner as the beneficiary's father, then historical secondary evidence, such as medical records, school records, and religious documents, as well as affidavits, may be submitted and evaluated for its authenticity and credibility. 8 C.F.R. § 204.2(d)(2)(v) (1998). The federal regulations also provide that the claimed relationship may be established through the submission of blood test results but that generally "blood tests will be required only after other forms of evidence have proven inclusive."  8 C.F.R. § 204.2(d)(2)(vi). When the Service's request for additional evidence to prove paternity is limited to historical evidence, as occurred in the instant case, the petitioner may be given the impression that the submission of historical evidence is the only manner in which paternity may be proven. For a father to have available to him historical evidence such as medical records, school records, or religious documents that relate to his child and specifically refer to him as the child's father, the father most likely would have had some kind of a personal relationship with the child at the time the events recorded in the documents occurred. However, as noted above, section 101(b)(1)(C) of the Act does not require that a father and his child have any relationship other than a purely biological relationship in order for the child to qualify as a "legitimated" child. In cases where the secondary evidence specifically referenced in the Service's request for additional evidence is unavailable, a petitioner may mistakenly conclude that no other manner of establishing paternity will suffice. The petitioner may simply not respond to the Service's request and abandon pursuit of a petition that may be approvable.

A blood test is the sole method of proving a claimed biological relationship expressly mentioned in the federal regulations that does not require any previous personal relationship between the father and his child. We therefore hold that when the Service determines that paternity has not been adequately established by primary evidence, it should, in its request for

additional evidence, advise the petitioner of the alternative of submitting the results of blood tests, conducted and reported in conformance with the procedural requirements found in 8 C.F.R. § 204.2(d)(2)(vi),[2] if the affidavits and historical secondary evidence referenced in 8 C.F.R. § 204.2(d)(2)(v) are not available to prove paternity. Our decision should not be interpreted as permitting the Service to present a petitioner with the option of submitting blood test results as the sole method to prove paternity or permitting a petitioner to bypass the prescribed evidentiary steps for establishing paternity. The federal regulations specifically provide that, generally, "blood tests will be required only after other forms of evidence have proven inconclusive." 8 C.F.R. § 204.2(d)(2)(vi). However, we note that where both the petitioner and the Service are amenable, there is no prohibition against moving directly from primary evidence to blood tests, and, in fact, it may be reasonable in some situations to do so.

The record will therefore be remanded to the RSC director to provide the petitioner with an opportunity to submit blood test results in conformance with the above-stated requirements in order to prove his paternity of the beneficiary. The RSC director should consider all of the evidence of record, including any new evidence submitted by the petitioner on remand, and enter a new decision in the case. The burden of proof remains with the petitioner on remand to establish eligibility for the benefits sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

**ORDER:** The record is remanded to the RSC director for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

Board Member Anthony C. Moscato did not participate in the decision in this case.

---

[2]The federal regulation at 8 C.F.R. § 204.2(d)(2)(vi) provides that when blood tests are conducted to establish a familial relationship, a Specific Blood Group Antigen test should be done first. If that test proves inconclusive, a Human Leucocyte Antigen test should then be done. The regulation further provides that "[t]ests will be conducted, at the expense of the petitioner or beneficiary, by the United States Public Health Service physician who is authorized overseas or by a qualified medical specialist designated by the district director. The results of the test should be reported on Form G-620." *Id.*