# Matter of Nejat Ibrahim RUZKU, Beneficiary of a visa petition filed by Abdalla Ibrahim Ruzku, Petitioner

*Decided March 29, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Direct sibling-to-sibling DNA test results reflecting a 99.5 percent degree of certainty or higher that a full sibling biological relationship exists should be accepted and considered to be probative evidence of the relationship.

FOR THE PETITIONER: Howard R. Davis, Esquire, Santa Monica, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Haena Lee, Service Center Counsel

AMICUS CURIAE: American Immigration Lawyers Association[1]

BEFORE: Board Panel: NEAL, Chairman; ADKINS-BLANCH, Vice Chairman; MANN, Board Member.

MANN, Board Member:

In a decision dated September 17, 2012, the California Service Center Director ("Director") denied the Petition for Alien Relative (Form I-130) filed by the petitioner to accord the beneficiary preference status as his sister under section 203(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(4) (2012). The petitioner has appealed from that decision. Counsel for the Department of Homeland Security ("DHS") opposes the appeal. The record will be remanded for further consideration of the visa petition.

In this case we must decide what the evidentiary value of direct sibling-to-sibling DNA test results should be and whether the Director may choose not to consider such evidence. In visa petition proceedings, the petitioner bears the burden of establishing the claimed relationship by a preponderance of the evidence; that is, he must show that it is more likely than not that his claimed sibling relationship to the beneficiary exists. *See Matter of Pagan*, 22 I&N Dec. 547, 548−49 (BIA 1999). We review

---

[1] We appreciate the thoughtful brief and additional materials submitted by Russell Reid Abrutyn.

all questions arising in visa petition proceedings de novo.  8 C.F.R. § 1003.1(d)(3)(iii) (2015).

The petitioner submitted delayed birth certificates for himself and the beneficiary, along with an undated family photograph and an affidavit from two persons asserting that they are relatives who have knowledge of the sibling relationship.  The birth certificates, which reflect that the petitioner and the beneficiary were both born in Eritrea to the same father and mother, were issued more than 25 years after their births.  The petitioner was advised by the United States Citizenship and Immigration Services ("USCIS") through two Requests for Evidence that this evidence was insufficient to establish the claimed relationship.

In response, the petitioner arranged for sibling-to-sibling DNA testing with a facility accredited by the AABB (formerly the American Association of Blood Banks).  That facility provided its DNA report directly to the USCIS.  The report stated that the probability of the petitioner and the beneficiary being full siblings is 99.8114 percent.  Accordingly, the report concluded that "it is very probable" that they are full siblings.

In denying the visa petition, the Director determined that the petitioner did not establish that the beneficiary is his sibling.  She declined to give persuasive weight to the delayed birth certificates, the single undated family photograph, or the relatives' affidavit, which did not reflect personal knowledge of the circumstances surrounding the births of the petitioner or the beneficiary.  The Director also afforded no weight to the DNA test results.  Finally, she did not indicate whether she assessed all the evidence in its totality.

On October 1, 2014, we requested supplemental briefing from the parties regarding the evidentiary value of sibling-to-sibling DNA test results.  Shortly thereafter, the USCIS issued a policy memorandum regarding sibling-to-sibling DNA test results, entitled "DNA Evidence of Sibling Relationships for Service Centers, Domestic and International Field Offices."  USCIS, DHS, PM-602-0106 (Oct. 17, 2014), *reprinted in* 91 Interpreter Releases, No. 42, Nov. 3, 2014, app. III at 1995.  The memorandum stated, among other things, that the USCIS "may not afford any evidentiary weight" to sibling-to-sibling DNA test results and will only consider parent-child DNA test results for each claimed sibling with a claimed common parent.[2]  *Id.* at 2−3.

---

[2]   We are not bound by policy memoranda issued by the DHS.  *See Matter of Arrabally & Yerrabelly*, 25 I&N Dec. 771, 776 n.4 (BIA 2012) (stating that policy set forth in DHS memoranda "is entitled to respect to the extent it has the 'power to persuade,' but it is not binding" (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000))).

The USCIS filed a brief citing to the policy memorandum and stating that direct sibling-to-sibling DNA testing is not sufficiently reliable to establish the claimed relationship.[3]  The memorandum indicates that the USCIS "learned that there is no universally accepted standard for relationship probability in sibling-to-sibling DNA testing" through consultation with its scientific resources, including the DHS's Science and Technology component, the National Institute of Science and Technology, and the AABB.  *Id.* at 2.  However, it cites no published sources to support its conclusion.  The memorandum also notes the continuing need for research to ensure that a set threshold number "will not exclude valid sibling relationships."  *Id.* at 2 n.3.

The petitioner and amicus curiae filed briefs urging us to accord probative value to direct sibling-to-sibling DNA test results where such results reflect the scientific community's accepted level of certainty of 99.5 percent or higher.  They further argue that even DNA test results reflecting a lower level of certainty should be considered in combination with other evidence submitted to prove the claimed relationship.  In support of its position that a 99.5 percent certainty should be considered probative evidence, amicus included information that referenced published scientific studies.

In order to be probative, evidence must tend to prove or disprove an issue that is material to the determination of the case.  *See Probative evidence*, *Black's Law Dictionary* (10th ed. 2014).  The USCIS's statement that sibling-to-sibling DNA testing is not sufficiently reliable to establish the relationship is not adequately supported.  The October 2014 policy memorandum explains that the scientific community does not agree on a particular statistical probability that conclusively proves a sibling relationship.  However, this does not establish that sibling-to-sibling testing is universally unreliable and that the results of such tests should be completely excluded from consideration.

According to a forensic DNA expert whose affidavit was submitted with the amicus brief, "The statistical and mathematical methods used to evaluate all of the different kinships are reliable, well established, and

---

[3]  There is no dispute that DNA testing between both siblings and a claimed common parent is the best evidence to establish a biological sibling relationship.  Such testing has long been accepted by the USCIS as conclusive of the parent-child relationship.  *See generally* Vol. 9, Foreign Affairs Manual § 601.11-1(A)(a)(2) (CT: VISA-3 Nov. 18, 2015) (previous location: 9 FAM § 42.44 note 1 (CT: VISA-2188 Oct. 3, 2014)) (stating that DNA "test results reporting a 99.5 percent or greater degree of certainty" may be accepted by consular officers as "sufficient to support a biological relationship between a parent and child in visa cases").  There are circumstances, however, where such parent-to-child testing is not possible.

uniform throughout the industry. What has not been established is the determination of the level of statistical probability that is convincing of a non-parentage relationship . . . ." The USCIS has not refuted this statement.

The USCIS's policy of barring consideration of any sibling-to-sibling DNA test results appears to be based on a concern that some results may reflect a lower level of probability than 99.5 percent, even where there is a true biological sibling relationship—in other words, that there is a risk of "false negative" test results that could lead to the denial of some visa petitions. We acknowledge this concern but do not believe it justifies the overly broad position taken by the USCIS that it will not accept sibling-to-sibling DNA test results or give them any evidentiary weight, even when they reflect a strong degree of certainty that the claimed biological sibling relationship exists.

As a comparison in this regard, we consider the evidentiary weight accorded to birth certificates. Birth certificates issued at or near the time of birth are generally accepted as highly probative evidence of a parent-child relationship. *See generally* 8 C.F.R. § 204.2(d)(2) (2015). On the other hand, because of the potential for fraud, birth certificates that reflect a delayed issuance may be given less evidentiary weight and "must be evaluated in light of the other evidence of record and the circumstances of the case." *Matter of Bueno*, 21 I&N Dec. 1029, 1033 (BIA 1997); *see also Matter of Ma*, 20 I&N Dec. 394, 397 (BIA 1991); *Matter of Serna*, 16 I&N Dec. 643, 645 (BIA 1978). Unlike the sibling-to-sibling DNA test results, however, the USCIS does not decline to consider timely issued birth certificates simply because some petitioners may not have them or may submit fraudulent birth certificates. It is likewise not logical for the Director to decline to afford any evidentiary weight to probative sibling-to-sibling DNA test results merely because some results may not have achieved the same level of probative value.

We acknowledge that DNA testing for siblings is different from such testing between a parent and child. Nevertheless, the arguments and scientific information presented on appeal persuade us that sibling-to-sibling DNA test results reflecting a degree of certainty of 99.5 percent or higher should be afforded some evidentiary value. Giving consideration to such test results would be in accord with the apparent consensus in the scientific community that they provide probative evidence of the biological relationship. We therefore conclude that when an AABB-accredited facility has determined, from direct sibling-to-sibling DNA testing of full siblings, that a 99.5 percent or greater probability of the sibling relationship exists, the test results should be accepted and considered to be probative evidence of the claimed relationship.

However, we do not hold that sibling-to-sibling DNA test results reflecting any particular percentage probability will *alone* be sufficient to establish a claimed full sibling relationship.[4]  Rather, we would generally expect that other evidence of the sibling relationship would be submitted and that all the evidence, including DNA test results, would be considered in its totality.  The weight to be accorded any particular DNA test results will depend on the degree of certainty that is reflected in those results.[5]

In this case, the petitioner submitted sibling-to-sibling DNA test results showing that the probability that he and the beneficiary are full siblings is 99.8114 percent.  These results should therefore be accepted and considered by the Director to be probative evidence of the petitioner's sibling relationship to the beneficiary.  Accordingly, we will remand the record for the Director to consider all of the evidence presented in support of the visa petition, including the sibling-to-sibling DNA test results, and to determine whether the petitioner has met his burden of establishing the claimed full sibling relationship by a preponderance of the evidence.  On remand, the petitioner may be given an opportunity to present additional evidence.

**ORDER:**    The record is remanded to the Director for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[4]   We note that the scientific probabilities set forth in DNA test results are different from the legal standards that generally apply to the burden of proof in visa petition cases.  The forensic DNA expert whose affidavit was submitted with the amicus brief points out that the courts have not yet set the bar on what statistical probability is necessary to prove a biological relationship, but he states that "high probabilities can be trusted and low probabilities should be viewed as non-confirming."  Other evidence offered by amicus from the United Kingdom indicates that DNA test results of 90−99.99 percent are considered "[v]ery strong evidence" of the sibling relationship but that results of 10−89.99 percent would be considered "inconclusive."  In addition, the DNA test result report that was submitted in this case suggests as a guideline that a probability of 90 percent or greater should "support" a claim of a full sibling relationship; 98 percent or greater should "strongly support" the claim; and 99 percent or greater should "practically prove" the claim.

[5]   There may be a stronger need for additional evidence in the case of half-sibling relationships.  The scientific information submitted by amicus indicates that half-siblings share only 25 percent of their DNA (unlike full siblings who share 50 percent of their DNA) and that their relationship to one another is "genetically identical" to that of other second-degree relationships, such as those of grandparent-grandchild and aunt/uncle-niece/nephew.  Thus, while DNA test results might reflect that the parties are biologically related, additional evidence will be needed to establish, by a preponderance of the evidence, which of those genetically similar relationships, in fact, exists.