MATTER OF K——

In VISA PETITION Proceedings

VP 3–I–118423

*Decided by Board July 18, 1958*

**Legitimation of children—Poland—Evidence.**

Under Polish law, a child born out of wedlock is legitimate or legitimated when acknowledged by its natural father. When primary evidence of acknowledgment in the form of a certificate issued by the Polish Registrar is lacking, a certificate of birth and baptism showing the father's name may be regarded as satisfactory secondary evidence of such acknowledgment.

**BEFORE THE BOARD**

**Discussion:** The case comes forward on appeal from the order of the District Director, New York District, dated April 3, 1958, denying the visa petition on the ground that the beneficiary, having been born out of wedlock and never legitimated, was not entitled to nonquota or preference quota status through her natural father.

The petitioner, a native of Poland naturalized on July 15, 1957, at New York, seeks nonquota status or preference status on behalf of his daughter, who was born in Poland on May 18, 1939. It is conceded by the petitioner that the beneficiary was born to his fiancee out of wedlock. However, the petitioner asserts that he intended to marry the mother of the beneficiary but that through some family misunderstanding the marriage did not take place before the birth of the child, that 3 months after the child was born war broke out and that he has never since returned to Poland. However, he states that he has always recognized the beneficiary as his daughter and that while in England in 1948 he sent a document to the Polish authorities acknowledging paternity of the beneficiary and that she has been registered in his name.

The only document the petitioner has been able to submit is a certificate of birth and baptism issued on the basis of church birth certificate books for the year 1948 by the Roman Catholic Church in the parish of the Holy Cross at Warsaw, Poland, showing the birth of the beneficiary on May 18, 1939, and showing the father's name as that of the petitioner and the mother's name as A——R——.

73

The date of baptism is given as May 19, 1948. At oral argument the petitioner repeated that he had made a statement before a notary public in 1948 which he had sent to Poland to the mother of the beneficiary but that he was not aware of whether it was filed with the church or the civil authorities. The petitioner further states that the mother of the beneficiary died in 1957, and that he included the name of the beneficiary in his citizenship papers.

In order to obtain any status under the immigration laws for nonquota or preference purposes through the father, it is necessary that the beneficiary be either a legitimate or a legitimated child of the petitioner. It, therefore, becomes necessary to examine Polish law to determine whether there is any basis for the claim made by the father that his act of acknowledgement in 1948 constituted a legitimation of his daughter.

An article entitled "Children Born out of Wedlock—Poland" appearing in *Highlights*, Mid-European Law Project, Library of Congress,[1] is of invaluable assistance in determining whether the beneficiary may be regarded as a legitimate or a legitimated child. The Poland resurrected after World War II retained civil laws inherited from the partitioning powers in each of its four parts. The civil laws of all four jurisdictions, however, had some features in common in regard to the status of children. None of the jurisdictions any longer held the old-fashioned concept of bastardy. A child whose parents were not married was not called an illegitimate child but a "child born out of wedlock" (dzieko nieslubne). Such a child had a definite status in all jurisdictions and was a member of its mother's family with all the rights pertaining to such status. The child's father was obliged to contribute to its maintenance although the details varied in the different jurisdictions.

In 1946 the legal status of children in Poland was regulated by the statute of January 22, 1946, on the Law of Domestic Relations and the Decree of January 22, 1946, concerning the enactment of this statute. Both statutes became effective July 1, 1946. The law of 1946 ruled in Article 51 that a child born out of wedlock shall have the rights deriving from relationship to its mother or her family. The law of 1946, however, consequently abandoned the traditional differences between "legitimate" and "illegitimate" children replacing them with a new distinction reading children born "in and out of wedlock." It was also made clear that any kind of discrimination against a child born out of wedlock would be abrogated with retractive effect. Under Article 86 the child acknowledged by his father shall have the legal status of a child born in wedlock.

The unified law of 1946 retained the institution of legitimation by subsequent marriage (Article 63(1)) as it existed previously,

[1] Vol. 5, Nos. 9 and 10, Sept. and Oct. 1957, pp. 383 to 394.

but the institution of legitimation by a decree issued by the state authorities (*per rescriptum principis*), previously known in Poland in its various legal systems and still existing in other European countries, was abolished completely. However, an extraordinary "quasi legitimation" of children born out of wedlock under peculiar conditions was established. By decree of the guardianship authority—in practice, by a special decision of the county court—a child born out of wedlock and legitimized by the father's acknowledgement might be "granted the legal status equal to that of a child born in wedlock if his parents had actually lived together as husband and wife or treated the child as if he were their child born in wedlock" (Article 69(1)). This rule referred particularly to the extraordinary conditions caused by the Nazi occupation of Poland during the last war. It was evidently aimed at settling the uncertain status of these children by removing the legal hardship for which they could not be held responsible.

A separate "Code of Domestic Relations" (Kodeks Rodzinny) was promulgated by the Statute of June 27, 1950, which took effect on October 1, 1950, and was amended in 1953. The law enforcing the Code of Domestic Relations of 1950 states in Article 2 that "all restrictions concerning the legal status of children who do not descend from the husband of their mother (children born out of wedlock) shall be abrogated." The new Code of Domestic Relations abolished all distinction between the legal status of a child born of legally married parents and that of a child born out of wedlock. Article 67(2) of the Constitution of the Polish People's Republic (of 1952) states that a child born out of wedlock shall suffer no loss of rights. The Code of Domestic Relations does not draw any distinction at all between the legal status of children born in wedlock and those born out of wedlock. The abrogation, by the Code of Domestic Relations, of those differences which were still retained in the law on Domestic Relations in 1946, represents one of the most important reforms of this Code.[2] The Code of Domestic Relations goes so far in regulating uniformly the rights and duties of children without any distinction as to their descent that the term "children born out of wedlock" is not even used any more.[3]

Article 42 of the 1950 Code presumes (1) that a child born during an existing marriage or before the lapse of 300 days after its cessation or invalidation was fathered by the mother's husband; and (2) whenever a child is born before the lapse of 300 days after the cessation or the invalidation of the marriage bond, but after the contract

---

[2] Seweryn Szer, Prawo Rodzinne (The Law on Domestic Relations), Warsaw: 1954, p. 144.

[3] *The Code of Domestic Relations; Collected Work*, ed. Maurycy Grudzinski and Jerzy Ignatowicz (Warsaw: 1955), p. 169.

of another marriage by his mother, it shall be presumed that the child was fathered by the husband of the first marriage. In addition, Article 43 provides that the father of the child is he who has acknowledged the child or whose paternity has been decreed by the court. The acknowledgement of paternity by a person who is not the husband of the child's mother must be made through the Registrar of Births, Deaths and Marriages or before the guardianship authority (Article 44 (2)). The consent of the child's mother is necessary (Article 44 (1)). The acknowledgement has the effect that the child and the father obtain mutually all rights and duties deriving from the relationship of parent and child. The child comes under the parental power of the father, which the father shares with the child's mother, on the principle of equality of parental rights. This principle concerns also all other duties and rights connected with parental power. Between father and child originates the mutual duty of support; and the child, as well as the father, obtains all rights of inheritance. Finally, the child is given the father's family name.

Since the present legal system does not make any distinction at all between legitimate and illegitimate children as a matter of principle, no "legitimation" whatever is known in the Code, nor is it possible as a constructive institution. Thus, the traditional legitimation of a child born out of wedlock, specifically by subsequent marriage, is also unknown. Nevertheless, the Code now provides that whenever the parents of a child born out of wedlock contract marriage after the child is born, "the child shall use its father's family name" (Article 37(1)). This, however, does not imply "legitimation." All that is required to give the child a definite status equal to that of a child born in wedlock is the establishment of paternity by court decree or by acknowledgement by the father.

According to Article 36(1) of the Code of 1950, "the child shall use his father's family name." But as long as the question of paternity has not been decided with regard to a child not born out of wedlock or whose paternity has been successfully denied by the "husband of the child's mother" (who had been the presumptive father of this child), and the real father of the child had not yet been established, "the child shall use his mother's family name if the father is unknown" (Article 36(1)). Thus, as soon as the paternity with regard to the child has been established "by acknowledgement by the real father or by judicial decree" the child obtains his father's family name. In the Registrar of Births the date left open because of the "unknown father" shall be entered as soon as the child's father has been identified and legally established, and the family name of the child finally fixed as corresponding to

his father's family name (Article 62 of the Statute of the Organization of the Registrar of Births, Deaths and Marriages).

The provisions of the Code of Domestic Relations (of 1950)—particularly those concerning the children's status, presented and discussed above—shall have retroactive effect also on all persons born before October 1, 1950, the day of enactment of the Code. The law on the enactment of the Code provides in Article X that the provisions of the Code of Domestic Relations of 1950 shall apply to all relations concerned by the Code even though they may have originated before the enactment of the Code, unless provision is otherwise made. It should be added that there are no such provisions in this law providing otherwise concerning the status of children or the relationship between parent and child. Finally, Article XXVII of the articles of the Law of August 22, 1950, on the Provisions for the Enactment of the Code of Domestic Relations, provides as follows:

Wherever the paternity of the man who is not the husband of the mother has been determined in any way provided by rules enforced before the day of the enactment of the Code of Domestic Relations, the child shall, with the day of the enactment of this Code, obtain all rights and duties of his father and family following from the Code of Domestic Relations and from this law.

The petitioner herein has stated that he is the natural father of the beneficiary, that he has always acknowledged the child as his own, and that he sent a formal acknowledgement of paternity to the Polish authorities in 1948. The certificate of birth and baptism which shows that the beneficiary bears the father's name may be regarded as a subsidiary document and offers corroboration of the petitioner's statement regarding acknowledgement in 1948. While primary evidence of acknowledgement in the form of a certificate issued by the Polish Registrar of Births, Deaths and Marriages is lacking, the certificate of birth and baptism may be regarded as satisfactory secondary evidence thereof. In view of the summary of the Polish law which renders legitimate a child acknowledged by its natural father, it is considered upon the evidence presented that the beneficiary in the instant case should be regarded as the legitimate or legitimated child of the petitioner. Accordingly, the visa petition will be approved for nonquota status.

**Order:** It is ordered that the visa petition be approved for nonquota status on behalf of the beneficiary.