## APPENDIX A

### LEGITIMATION

### Ecuador

This report concerns the requirements for legitimation in Ecuador from 1936 to the present.

During this time period, legitimation was apparently controlled by a number of provisions contained in the different constitutions that were successively in force in the country and in the Civil Code. Since these provisions may not reveal a clear sequence, a brief legislative history follows.

A. *Civil Code Provisions in Force until the Enactment of the 1945 Constitution*

As of 1945, the Civil Code[1] established and defined two basic categories of children: legitimate and illegitimate. Legitimate children were those conceived during a fully valid or putative marriage of their parents, as well as those whose parents had married each other after their conception. Illegitimate children were those who had been voluntarily acknowledged as such by either parent or both parents, as well as those who had been declared to be so by judicial decision.[2]

Regarding children born out of wedlock, the Code provided that they could be acknowledged by either parent or both parents. In such cases, these children were to enjoy the rights assigned to them by law in relation to the acknowledging parent or parents.[3] The acknowledgment of children could be made by means of a public instrument which could be: (a) notarial, (b) issued before a judge and three capable witnesses, (c) on a will, (d) a personal statement issued at the time of registration of the birth, or (e) a part of the marriage record of the parents.[4] A child who had not been voluntarily acknowledged by the parents could petition the courts to issue a declaration of filiation in regard with either parent or both parents.[5]

---

[1] A 1930 version of the Ecuadorean Civil Code as amended by Supreme Decree 94 of Nov. 23, 1935, was consulted for this part of the report: *Codigo Civil* [C. Civ. I] [Talleres Graficos Nacionales, Quito, 1930].

[2] C. Civ. I, arts. 30, 31 and 269.

[3] C. Civ. I, arts. 267 and 271.

[4] C. Civ. I, arts. 201 and 269.

[5] C. Civ. I, arts. 277-289.

With regard to legitimation, the.Civil Code, as amended by Supreme Decree 94 of November 21, 1935,[6] provided that the marriage of the parents to each other produced the effect of legitimating *ipso jure* the children conceived or born prior to the celebration of that marriage.[7] Children born prior to the marriage who were not acknowledged by both parents did not benefit by the *ipso jure* legitimation by subsequent marriage of their parents; the acknowledgment by both parents as described above is necessary. This acknowledgment could take place at any time.

In short, legitimation of children born out of wedlock required two basic elements: (1) acknowledgment of filiation by both parents and (2) subsequent marriage of the children's parents to each other.[8]

### B. *Provisions of the 1945 Constitution*

On March 6, 1945, a new Constitution was enacted which provided that legitimate and illegitimate children had the same rights to support and inheritance.[9] The new Constitution also provided that in registering births no statement could be required concerning the status of filiation.[10] The Constitution did not further elaborate on the effects of these new rules upon the existing provisions of the Civil Code. The only other applicable provision was contained in article 163, which provided that any laws, decrees, regulations, ordinances, etc., which were in any way contradictory to it or which departed from its text had no validity.[11]

This Constitution was in force for only a few months, however, and therefore, according to Dr. Juan Larrea Holguin,[12] its provisions did not affect other laws governing the subject or judicial decisions rendered on the matter after its enactment.[13]

---

[6] J. Torres, *Compilacion de Reformas al Codigo Civil, Leyes y Reglamentos Conexos* [Talleres Graficos del Ministerio de Gobierno, Quito, 1942].

[7] *Id.* at 17, art. 11, amending C. Civ. I, art. 200.

[8] C. Civ. I, arts. 201 and 202.

[9] *Constitucion*, art. 142 (3) (1945) [R. Borja y Borja, *Las Constituciones del Ecuador* (Ediciones Cultura Hispanica, Madrid, 1951)] (hereinafter cited as Borja).

[10] *Id.*, art. 142 (4). This provision implied an important change in the existing system where the Registry of Births at the Civil Registry was formed by three sections: (1) for legitimate children, (2) for illegitimate children, and (3) for children either abandoned or with unknown parents.

[11] *Constitucion*, art. 163 (1945) (Borja at 622).

[12] Dr. Larrea Holguin is a professor of law at the Universidad Catolica del Ecuador, and author of numerous books and articles concerning civil law. He has also been active in the drafting of bills amending Civil Code provisions.

[13] J. Larrea Holguin, *Igualdades de los Conyuges e Igualdades de los Hijos* 7-9 (Corporacion de Estudios y Publicaciones, Quito, 1967). It should also be noted that, in preparing this report, several updated versions of the Civil Code were consulted and appear to contain no amendments based on the 1945 Constitution.

## C. *Provisions of the 1946 Constitution*

On December 31, 1946, the Constitution of 1945 was repealed and replaced by a new one which made a differentiation between legitimate and illegitimate children regarding inheritance rights.[14] It also provided the following:

> *Art. 165.* The law shall regulate all matters relating to filiation and its rights and investigation of paternity. In registering births, no statement may be required concerning the status of filiation.

No significant amendments were apparently introduced to the Civil Code concerning this subject; therefore, the legal status of filiation and legitimation remained the same as described in section A above until May 25, 1967, when a new Constitution entered into force.[15]

## D. *Provisions of the 1967 Constitution*

The new Constitution regulated this subject in the following terms:

> *Art. 29.* . . . Children, whether born in or out of wedlock, have the same rights with regard to name, upbringing, education and inheritance.
> The law shall regulate matters pertaining to filiation and shall facilitate investigation as to paternity.
> In registering births, no statement shall be required concerning the status of filiation.[16]

This provision and others concerning various matters were contrary to the existing provisions of the Civil Code and related laws and regulations. The Constitution provided its own supremacy in the following terms:

> *Art. 257.* The Constitution is the supreme law of the State. All other laws must be in conformity with constitutional principles; therefore, any laws, decrees, regulations, ordinances, provisions, and public treaties that are in any way contradictory to it are null and void.
> *Art. 260.* This Constitution repeals all previous juridical precepts that are contrary to its provisions, whether issued by legitimate authorities or by *de facto* governments, so that any laws, decrees, regulations, decisions, orders, or resolutions issued before the Constitution takes effect shall be in force only insofar as they are in conformity with it, and provided that they are not or have not been repealed or revoked, with the exception of rights validly acquired in accordance with such precepts.

## E. *Current Civil Code Provisions*

Given the constitutional provisions in force, a new version of the Civil

---

[14] *Constitucion,* art. 164 (1946) (Borja at 681).

[15] The new Constitution was enacted, published in the *Registro Oficial* and entered into force on the same date, May 25, 1967.

[16] *Constitution* (1967) [Organization of American States, Washington, 1968] (English version).

Code was necessary in order to adapt its provisions to the new norms and to clarify the existing legal situation in several areas. A special commission was charged with drafting a bill containing the necessary amendments to the Civil Code.[17]

The draft prepared by the special commission was almost entirely accepted by the Legislative Commission of Congress. The Legislative Commission expressed the opinion, however,. that no distinction should be made between legitimate and illegitimate children, so that all children should have not only the same rights but also the same denomination.[18]

Congress approved this bill in the terms established by its own Legislative Commission and sent it to the President for its enactment. The President, however, objected to the part of the bill that eliminated the categories of legitimate and illegitimate children because he understood that "the Political Constitution in force does not imply that the categories of legitimate and illegitimate children have disappeared."[19] The Legislative Commission reiterated its position and Congress overrode the President's objections.[20] Finally on June 4, 1970, the law amending the Civil Code was enacted.[21]

The new law eliminated the expressions "legitimate" and "illegitimate" from the Civil Code when they referred to children, and all of the provisions concerning legitimation were suppressed. The procedures for acknowledging children born out of wedlock, however, remained the same as described earlier, although the numeration of the articles of the Civil Code dealing with them was changed.[22] The only novelty contained in the new Code on this subject was that the acknowledgment was now permitted from the time of the child's conception.[23]

### F. *New Constitutional Developments*

As said before, the Civil Code was amended in order to adjust its provisions to the 1967 Constitution. However, on June 22, 1970, several days after the amendments were enacted, the President in a *de facto* decision assumed all the powers of the State, repealed the 1967 Constitution and declared the 1946 Constitution to be in force "to the extent to

---

[17] This commission was formed by Drs. Juan Larrea Holguin and Francisco Costales Herrera.

[18] 6 J. Larrea Holguin, *Derecho Civil del Ecuador* 9 (Corporacion de Estudios y Publicaciones, Quito, 1970) [hereinafter cited as Larrea II].

[19] Letter of President Jose M. Velasco to the Permanent Legislative Commission of Congress, Apr. 1, 1970, cited in Larrea II at 318.

[20] Larrea II at 326.

[21] Law 256 of June 4, 1970, *Registro Oficial* [R.O.], June 4, 1970.

[22] *Codigo Civil* [C. Civ. II], arts. 261-274 [7th ed., R.O. Sup. 104, Quito, Nov. 20, 1970].

[23] C. Civ. II, art. 261 (2).

which it is not contrary to the purposes of the Government."[24] Although both Constitutions did not differ substantially in other matters, they were in disagreement with regard to the existence of legitimate and illegitimate children. The 1946 Constitution expressly acknowledged the categories and granted better inheritance rights to legitimate children.[25] This fact created uncertainty about the applicability of the recent reforms to the Civil Code that was finally resolved by the promulgation of Supreme Decree 180 that declared in force the amendments of June 4, 1970.[26]

On January 15, 1972, a new *de facto* Government took power and issued a decree repealing the 1946 Constitution and declaring in force the Constitution of 1945.[27]

On January 11, 1976, a Military Junta took power and declared in force once again the 1945 Constitution "in all matters in which it is not inconsistent with the purposes of political transformation."[28]

On January 15, 1978, a national referendum approved a new Constitution, which took effect on August 10, 1979, with the inauguration of the President and Vice President of the Republic[29] elected in July 1978. This new charter states that in registering births and in identification documents no statement may be made as to the status of filiation.[30]

Apparently these last constitutional changes had no bearing on the Civil Code provisions concerning legitimation. No judicial precedents or legal literature on the subject are available to better interpret this legal situation. The only additional information available is a provision in the new Civil Registry Law.[31] Article 129 of this law provides that "for all legal purposes, acknowledgment and legitimation of children shall be considered equivalent."

The Code of Minors currently in force, enacted on June 2, 1976,[32] also makes no distinction between legitimate and illegitimate children. It specifically extends its protection and benefits to all children regardless of their family status.

In conclusion, it appears that under the early Civil Code and related laws the basic requirements for legitimation were the acknowledgment of the child by both parents and their subsequent marriage to each other, while under the current Civil Code there is no longer a distinction

---

[24] Larrea II at 11.
[25] *Constitucion*, art. 164 (1946) (Borja at 681).
[26] Supreme Decree 180 of Aug. 7, 1970, R.O., Aug. 7, 1970.
[27] Decree 1 of Feb. 15, 1972, R.O., Feb. 16, 1972.
[28] Supreme Decree 01 of Jan. 11, 1976, R.O. Jan. 12, 1976.
[29] Decree 2400 of Mar. 31, 1978 (R.O., Apr. 12, 1978), art. 1.
[30] Constitucion Politica de la Republica de Ecuador, art. 22, R.O., Mar. 27, 1979.
[31] Decree 278 of Apr. 2, 1976, R.O., Apr. 21, 1976.
[32] R.O., June 14, 1976.

between legitimate and illegitimate children; therefore only the acknowledgment by either or both parents is required for establishing filiation.

Prepared by Eduardo Abbott
Legal Specialist
Hispanic Law Division
Law Library, Library of Congress
April 1978
Updated February 1980