# MATTER OF GOORAHOO

### In Visa Petition Proceedings

### A-29879909

### *Decided by Board February 9, 1994*

(1) In order to obtain preference status for the beneficiary as his son pursuant to section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1988), a petitioner must establish that the beneficiary qualifies or once qualified as his "child" within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1988).

(2) When the country where a child is born eliminates all legal distinctions between illegitimate and legitimate children, all natural children are deemed to be the legitimate offspring of their natural parents from the time that country's laws are changed.

(3) By virtue of the Children Born Out of Wedlock (Removal of Discrimination) Act, effective May 18, 1983, Guyana has eliminated all legal distinctions between legitimate and illegitimate children.

(4) Children born out of wedlock in Guyana after May 18, 1983, and children who are under the age of 18 prior to that date are deemed legitimate and legitimated children, respectively, pursuant to sections 101(b)(1)(A) and (C) of the Act. *Matter of Gouveia*, 13 I&N Dec. 604 (BIA 1970), modified.

ON BEHALF OF PETITIONER:               ON BEHALF OF SERVICE:
Pro se                                 David M. Dixon
                                       Appellate Counsel

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members

In a decision dated July 29, 1991, the Regional Service Center ("RSC") director approved the visa petition filed by the petitioner to accord the beneficiary preference status as his son pursuant to section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1988). The RSC director subsequently certified his decision to the Board for review, seeking clarification of our decision in *Matter of Gouveia*, 13 I&N Dec. 604 (BIA 1970), in light of the Children Born Out of Wedlock (Removal of Discrimination) Act, No. 12 (1983) (Guy.) ("Removal of Discrimination Act") enacted in Guyana in 1983. The approval of the visa petition will be affirmed.

The petitioner is a 31-year-old native and citizen of Guyana and lawful permanent resident of the United States. The beneficiary is a 6-

year-old native and citizen of Guyana, born on November 27, 1987. In support of the visa petition, the record contains the beneficiary's birth certificate, reflecting the petitioner as father, and an affidavit executed on January 26, 1990, by the beneficiary's mother, attesting that she never married the petitioner, that the petitioner acknowledged paternity of the beneficiary, and that the petitioner regularly contributed towards the beneficiary's maintenance and continues to show interest in his welfare and upbringing to date.

The record also contains a memorandum opinion from a senior legal specialist at the Library of Congress dated January 16, 1986, which was furnished to the RSC director upon his request for information on the status of children born to unmarried parents in Guyana. Attached to the memorandum is a copy of the Removal of Discrimination Act. The Library of Congress memorandum explains that in sum, the Removal of Discrimination Act amends five preexisting Guyanese laws in the following ways: it replaces the terms "bastard" in the Evidence Act, Guy. Rev. Laws, ch. 5:03 (1978), and "illegitimate person" in the Legitimacy Act, Guy. Rev. Laws, ch. 46:02 (1978), with "child born out of wedlock"; it broadens the Maintenance Act, Guy. Rev. Laws, ch. 45:03 (1978), to benefit a child born to unmarried parents; it amends the Civil Law Act, Guy. Rev. Laws, ch. 6:01 (1978), to allow children born out of wedlock to inherit property without restriction from their deceased fathers in case of intestate succession; and it amends the Infants Act, Guy. Rev. Laws, ch. 46:01 (1978), so that courts may award custody of a child born out of wedlock to his or her putative father.

According to the Library of Congress memorandum, the intention of the Parliament of Guyana in enacting the Removal of Discrimination Act was to conform the existing laws of the country with the nonbinding guiding principles set forth in Section 30 of a new constitution adopted in 1980 which stated: "Children born out of wedlock are entitled to the same legal rights and legal status as are enjoyed by children born in wedlock. All forms of discrimination against children on the basis of their being born out of wedlock are illegal." Guy., Const. ch. 2., § 30. However, unlike some of its counterparts in other jurisdictions, the Removal of Discrimination Act itself does not have a broad provision that purports to eliminate the legal distinctions between children born in and out of wedlock by declaring all to be of equal status regardless of the marital status of their parents. Rather, the Act amended preexisting Guyanese laws on an individual basis. Thus, in contrast to laws which expressly override

any overlooked or nonexempted rules of law,[1] the Removal of Discrimination Act does not override any legal distinctions not specifically amended. Nevertheless, pursuant to the Library of Congress' review of the available laws of Guyana, it does not appear that any distinctions have been overlooked or intentionally excluded from coverage. Thus, despite the different approach taken by the Guyanese Act, the Library of Congress memorandum concludes that children born out of wedlock in Guyana have rights equal to those of children born in wedlock.

In his decision of July 29, 1991, the RSC director noted our decision in *Matter of Gouveia, supra,* rendered in 1970, in which we concluded that under the laws of Guyana, the legitimation of a child born out of wedlock required the marriage of the natural parents. However, based upon the 1983 Removal of Discrimination Act and the above-described opinion from the Library of Congress, the RSC director concluded that Guyanese children born out of wedlock have rights equal to those of children born in wedlock. The RSC director consequently found that the beneficiary would be considered the legitimate or legitimated son of the petitioner, and the visa petition was therefore approved.

In order to qualify as a "son" for preference purposes, the beneficiary must once have qualified as a "child" of the petitioner as that term is defined by section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1988). *Matter of Coker,* 14 I&N Dec. 521 (BIA 1974). Section 101(b)(1) of the Act includes the following within the definition of the term "child":

> (A) a legitimate child;
>
> . . . .
>
> (C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

The term "legitimate" generally applies to children born in wedlock. *See Matter of Pavlovic,* 17 I&N Dec. 407 (BIA 1980); *Matter of Kubicka,* 14 I&N Dec. 303 (BIA 1972). The term "legitimated" has been interpreted to include those children who were illegitimate at birth, but who thereafter through legally recognized means attained the

---

[1] *See, e.g., Matter of Hernandez,* 19 I&N Dec. 14 (BIA 1983) (Colombian law on civil status of children); *Matter of Cardoso,* 19 I&N Dec. 5 (BIA 1983) (Cape Verde Laws on Marriage, Divorce and Filiation); *Matter of Clahar,* 18 I&N Dec. 1 (BIA 1981) (Jamaican Status of Children Act).

full legal status of legitimate children. *Matter of Reyes*, 17 I&N Dec. 512 (BIA 1980).

We have held that when the country where a child was born eliminates all legal distinctions between legitimate and illegitimate children, all children are deemed to be the legitimate offspring of their natural parents from the time that country's laws are changed. *Matter of Patrick*, 19 I&N Dec. 726 (BIA 1988); *Matter of Hernandez*, 19 I&N Dec. 14 (BIA 1983); *Matter of Pavlovic, supra; see also Lau v. Kiley*, 563 F.2d 543 (2d Cir. 1977). That is, children born after a country's laws are changed in the above manner are deemed to be legitimate, and children born prior to such a change in the law are deemed to be legitimated as of the date of the change, provided, of course, that a child so legitimated was under the age of 18 years at the time the law changed, as required by section 101(b)(1)(C). *See Matter of Oduro*, 18 I&N Dec. 421, 423 n.2 (BIA 1983). We consider all legal distinctions abolished only where there is complete equality of filial rights between legitimate children and those born out of wedlock. *See Matter of Oduro, supra; Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981); *Matter of Reyes, supra.*

On our review of the record, including the opinion of the Library of Congress, and that of the RSC director, we are satisfied that pursuant to the Removal of Discrimination Act, Guyana has eliminated all legal distinctions between legitimate and illegitimate children. Thus, children born out of wedlock in Guyana after May 18, 1983, which is the effective date of the Removal of Discrimination Act, and children who are under the age of 18 prior to that date are deemed legitimate and legitimated children, respectively. Our decision in *Matter of Gouveia, supra*, is modified accordingly.

The beneficiary was born in 1987. The petitioner's paternity is not contested. Consequently, the beneficiary qualifies as the legitimate child of the petitioner pursuant to section 101(b)(1)(A) of the Act, and the visa petition was properly approved.

For the foregoing reasons, we shall affirm the RSC director's approval of the visa petition.

ORDER: The decision of the RSC director is affirmed.