# Matter of Shawn Theodore HINES, Respondent

File A41 455 569 - Bridgeton, New Jersey

*Decided June 4, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Under Jamaican law, the sole means of "legitimation" of a child born out of wedlock is the marriage of the child's natural parents. *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981), overruled.

(2)  The respondent was born in Jamaica of natural parents who never married, and therefore his paternity was not established "by legitimation" so as to disqualify him from deriving United States citizenship pursuant to former section 321(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a)(3) (1988), through his mother's naturalization in 1991.

FOR RESPONDENT:  Raymond R. Bolourtchi, Esquire, Clayton, Missouri

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Sam A. Dotro, Assistant Chief Counsel

BEFORE:  Board Panel:  COLE, PAULEY, and HESS, Board Members.

COLE, Board Member:

In a decision dated February 26, 2007, an Immigration Judge terminated these removal proceedings based on a determination that the respondent derived United States citizenship through his mother pursuant to former section 321(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a)(3) (1988).  The Department of Homeland Security ("DHS") has appealed from that decision.  The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed.  The respondent was born out of wedlock in Jamaica on October 5, 1980, and his biological parents have never been married to each other.  On August 4, 1988, the respondent was admitted to the United States as a second-preference family-sponsored immigrant, based

on a visa petition that was filed by his mother, who was then a lawful permanent resident of the United States. The respondent's mother became a naturalized citizen of the United States in 1991, at which time the respondent was residing in her custody as a lawful permanent resident. The respondent's father is not a United States citizen.

On April 6, 2001, the respondent was convicted in New Jersey of robbery and aggravated assault, for which he was sentenced to lengthy prison terms. The DHS commenced removal proceedings, charging the respondent with removability as an alien convicted of an aggravated felony. *See* section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). The respondent moved to terminate the proceedings, however, arguing that he was a citizen of the United States who was not subject to the jurisdiction of the Immigration Court. The Immigration Judge sustained the motion and terminated the proceedings, concluding that the respondent had derived United States citizenship in 1991 upon the naturalization of his mother pursuant to former section 321(a)(3) of the Act.

On appeal the DHS argues that the respondent's derivative citizenship claim fails because he did not prove that his paternity "has not been established by legitimation" under Jamaican law, as required by former section 321(a)(3). In support of its argument, the DHS invokes our decision in *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981), where we held that a Jamaican child who had been born out of wedlock after the effective date of the Jamaican Status of Children Act of 1976 ("JSCA")—which purported to eliminate all legal distinctions between legitimate and illegitimate children—would be deemed to have been legitimated under Jamaican law for purposes of visa preference classification, even though the child may not technically have been "legitimated" under the Jamaican Legitimation Act. *Id.* at 3. According to the DHS, the respondent, who was born after the JSCA took effect, must likewise be deemed to have had his paternity established "by legitimation," thereby precluding him from qualifying for derivative citizenship solely through his mother.

## II. ISSUE

The issue in this case is whether the respondent derived United States citizenship through his mother's naturalization by virtue of his status as a child born out of wedlock in Jamaica whose paternity has not been established by legitimation under Jamaican law.

## III. ANALYSIS

The starting point of our analysis is the language of former section 321(a) of the Act.[1] In 1991, when the respondent's mother naturalized, section 321(a) provided in pertinent part as follows:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents *or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation*; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the . . . parent naturalized under clause . . . (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

Former section 321(a) of the Act (emphasis added).

In removal proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the respondent to come forward with evidence to substantiate his citizenship claim. *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 164 (BIA 2001) (citing *Matter of Leyva*, 16 I&N Dec. 118, 119 (BIA 1977)); *Matter of Tijerina-Villareal*, 13 I&N Dec. 327, 330 (BIA 1969). The respondent does not dispute that he was born in Jamaica and that he must therefore adduce evidence to prove that he is a United States citizen. It is also undisputed that the respondent was born out of wedlock and that both his admission to lawful permanent residence and his mother's naturalization occurred prior to his 18th birthday. Therefore, the dispositive question on appeal is whether the respondent has proved that his paternity "has not been established by legitimation" under Jamaican law. We conclude that he has.

---

[1] Former section 321 of the Act was repealed in 2001 and was replaced by new automatic citizenship provisions. *See* Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a), 114 Stat. 1631, 1632 ("CCA"). The respondent cannot acquire United States citizenship under these new provisions, however, because he was over 18 years old on February 27, 2001, the effective date of the CCA. *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153 (BIA 2001).

In *Matter of Rowe*, 23 I&N Dec. 962, 967 (BIA 2006), we resolved an issue virtually identical to that presented here, although in the context of Guyanese law. The respondent in that case was born out of wedlock in Guyana and claimed that he derived United States citizenship through his mother under former section 321(a)(3) of the Act. The Immigration Judge rejected his citizenship claim, concluding that the Guyanese Removal of Discrimination Act of 1983 had eliminated all legal distinctions between legitimate and illegitimate children, thereby "legitimating" the respondent by operation of law and precluding him from deriving United States citizenship solely through his mother. In arriving at that conclusion, the Immigration Judge relied on our decision in *Matter of Goorahoo*, 20 I&N Dec. 782 (BIA 1994), where we held that children born out of wedlock in Guyana after the effective date of the Guyanese Removal of Discrimination Act were to be considered the "legitimate" children of their biological fathers for preference allocation purposes.

After analyzing the evolution of our "legitimation" jurisprudence with respect to the law of Guyana, however, we ultimately disagreed with the Immigration Judge's decision and held that for purposes of the immigration laws of the United States, Guyana's statute forbidding discrimination against "illegitimate" children was not sufficient to effect the automatic "legitimation" of children born out of wedlock. *Matter of Rowe*, *supra*, at 966-67. Instead, we noted that under Guyana's Legitimacy Ordinance the only means by which a child born out of wedlock could be truly "legitimated" was by the marriage of his or her parents. Accordingly, we overruled *Matter of Goorahoo*, *supra*, and held, subject to future changes in Guyanese law, that a Guyanese child born out of wedlock could only be legitimated within the meaning of the immigration laws—whether for preference allocation or derivative citizenship purposes—by the marriage of his or her biological parents. *Matter of Rowe*, *supra*, at 967; *see also Poole v. Mukasey*, 522 F.3d 259, 265 & n.3 (2d Cir. 2008). Since the respondent's parents had never married, we concluded that he had derived United States citizenship under section 321(a)(3) upon the naturalization of his mother.

We consider *Matter of Rowe* to be controlling here. A review of Jamaican law reflects that the traditional legal concept of "legitimation" has survived despite other enlightened legal developments that have sought to place children on an equal footing without regard to the circumstances of their birth. Specifically, although the Jamaican Status of Children Act of 1976 eliminated all legal distinctions between "legitimate" and "illegitimate" children and provided a mechanism by which the father of a child born out of wedlock could acknowledge paternity, section 2 of the Jamaican Legitimation Act has

remained in effect and continues to provide that a child born out of wedlock can be "legitimated" only by the subsequent marriage of his or her parents.[2]

Having determined in *Matter of Rowe*, *supra*, that Guyana's statute relating to legitimation must take precedence over its antidiscrimination law with respect to questions of legitimacy arising under the immigration laws of the United States, we see no meaningful basis for coming to a different conclusion with respect to the Jamaican laws at issue here. Thus, in future cases, and subject to relevant changes in Jamaican law, we will deem a child born out of wedlock in Jamaica to have had his or her paternity established "by legitimation" only upon proof that the child's parents married at some time after the child's birth.

Moreover, absent a specific congressional directive to the contrary, our interpretation of the legitimation concept must be consistent throughout the immigration laws. *Matter of Rowe*, *supra*, at 967 (citing *Clark v. Martinez*, 543 U.S. 371 (2005)). Accordingly, the same considerations that prompted us to overrule *Matter of Goorahoo*, *supra*, now prompt us to overrule *Matter of Clahar*, *supra*. Thus, for purposes of both preference allocation and derivative citizenship, we will hereafter deem a child born out of wedlock in Jamaica to be the "legitimated" child of his biological father only upon proof that the petitioner was married to the child's biological mother at some point after the child's birth.

It is undisputed that the respondent's biological parents never married. It therefore follows that the respondent has never been legitimated under Jamaican law. Consequently, we find ourselves in agreement with the Immigration Judge's ultimate determination that the respondent derived United States citizenship under former section 321(a)(3) of the Act upon the naturalization of his mother in 1991. In view of the respondent's status as a United States citizen, the removal proceedings were properly terminated. Accordingly, the DHS's appeal will be dismissed.

**ORDER:** The appeal of the Department of Homeland Security is dismissed.

---

[2] The Jamaican Legitimation Act does not contemplate that a father's legal acknowledgment of paternity can effect the legitimation of a child. *Cf. Matter of Gouveia*, 13 I&N Dec. 604 (BIA 1970).