# Matter of Oshane Shaneil CROSS, Respondent

*Decided February 12, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A person born out of wedlock may qualify as a legitimated "child" of his or her biological parents under section 101(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1101(c)(1) (2012), for purposes of citizenship if he or she was born in a country or State that has eliminated all legal distinctions between children based on the marital status of their parents or had a residence or domicile in such a country or State (including a State within the United States), if otherwise eligible. *Matter of Hines*, 24 I&N Dec. 544 (BIA 2008), and *Matter of Rowe*, 23 I&N Dec. 962 (BIA 2006), overruled in part. *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981), and *Matter of Goorahoo*, 20 I&N Dec. 782 (BIA 1994), reaffirmed.

FOR RESPONDENT: Crescenzo DeLuca, Esquire, Whethersfield, Connecticut

FOR THE DEPARTMENT OF HOMELAND SECURITY: Amit Patel, Assistant Chief Counsel

BEFORE: Board Panel: COLE, PAULEY, and WENDTLAND, Board Members:

COLE, Board Member:

In a decision dated May 25, 2011, an Immigration Judge ordered the respondent removed from the United States. The respondent has appealed from that decision. The appeal will be sustained and the proceedings will be terminated.

The only question on appeal is whether the respondent derived United States citizenship upon the naturalization of his father pursuant to section 320(a) of the Immigration and Nationality Act, 8 U.S.C. § 1431(a) (2000). The Immigration Judge, relying on Board precedent, determined that the respondent—who was born out of wedlock in Jamaica to parents who never married—had not been "legitimated" under Jamaican law and thus did not qualify as his father's "child" within the meaning of the citizenship provisions of the Act. *See* section 101(c)(1) of the Act, 8 U.S.C. § 1101(c)(1) (2012) (defining the term "child" for purposes of title III of the Act, which is entitled "Nationality and Naturalization").

We now hold that a person born abroad to unmarried parents can qualify as a legitimated "child" under section 101(c)(1) of the Act if he or she was born in a country or State that has eliminated all legal distinctions between

children based on the marital status of their parents or has a residence or domicile in such a country or State (including a State within the United States), irrespective of whether the country or State has prescribed other legal means of legitimation. In so holding, we recede from *Matter of Hines*, 24 I&N Dec. 544 (BIA 2008), and *Matter of Rowe*, 23 I&N Dec. 962 (BIA 2006), to the extent these decisions hold that the concept of "legitimation" must be interpreted uniformly throughout the Act, including for purposes of visa preference classification. Consequently, our holdings in *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981), and *Matter of Goorahoo*, 20 I&N Dec. 782 (BIA 1994), are hereby reinstated and reaffirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 3, 1988, the respondent was born out of wedlock in Jamaica to parents who were not then citizens or nationals of the United States. At the time of the respondent's birth, the Jamaican Status of Children Act ("JSCA") of 1976 had eliminated the legal distinctions between legitimate and illegitimate children in that country. Before the respondent was born, we had also issued *Matter of Clahar*, which interpreted the JSCA and held that a Jamaican child who was born out of wedlock after the effective date of the JSCA is legitimated under Jamaican law for purposes of visa preference classification. In 1995, the respondent's father, who was then a native and citizen of Jamaica, placed his name on the respondent's Jamaican birth registration form, thereby qualifying the respondent as a legitimated child for purposes of visa preference classification under the Act. *See Matter of Pagan*, 22 I&N Dec. 547, 549 & n.1 (BIA 1999) (indicating that a Jamaican birth certificate amended to include the father's name may, in light of other evidence of record, be sufficient for visa preference classification).

The respondent's father eventually immigrated to the United States and subsequently accorded the respondent preference classification as his "child."[1] On September 2, 2000, at the age of 12, the respondent was admitted to the United States as an immigrant and thereafter resided in this country as a lawful permanent resident. On August 3, 2001, the respondent's father became a United States citizen by naturalization while the respondent was in his father's legal custody.

On January 15, 2010, the respondent was convicted of burglary in Connecticut, prompting the Department of Homeland Security ("DHS") to initiate removal proceedings. The respondent moved to terminate the

---

[1] Section 101(b)(1) of the Act defines the term "child" for purposes of visa preference classification, as well as matters pertaining to removal proceedings.

proceedings, however, on the ground that he became a United States citizen by operation of law when his father naturalized in August 2001.[2]  In support of his citizenship claim, the respondent invoked section 320(a) of the Act, which at all relevant times has provided as follows:

> A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
>     (1)  At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
>     (2)  The child is under the age of eighteen years.
>     (3)  The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

The Immigration Judge found that the respondent did not derive United States citizenship because the respondent met all of the requirements of section 320(a), except he did not qualify as his father's "child" under section 101(c)(1), which provides that the term "child" means

> an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere . . . , if such legitimation . . . takes place before the child reaches the age of 16 years . . . , and the child is in the legal custody of the legitimating . . . parent or parents at the time of such legitimation . . . .

As these provisions make clear, for derivative citizenship purposes, a person born out of wedlock is considered a "child" of his United States citizen parent or parents only if he was "legitimated" under the law of his own residence or domicile (or that of his father) before turning 16 and while in the legitimating parent's legal custody.  The Immigration Judge concluded that the respondent had not been "legitimated" under Jamaican law because his biological parents never married.[3]  In reaching that conclusion, the Immigration Judge relied on *Matter of Hines*, a derivative citizenship case arising under former section 321(a) of the Act, 8 U.S.C. § 1432(a) (1988), where we held that the sole means of "legitimating"

---

[2]  In removal proceedings, evidence of foreign birth gives rise to a presumption of alienage, which the respondent may rebut by coming forward with evidence to substantiate his claim to United States citizenship.  *E.g.*, *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 164 (BIA 2001).

[3]  The Immigration Judge also found that the respondent's father never legitimated him under the procedures prescribed for that purpose by the State of Connecticut.

a child born out of wedlock under Jamaican law was the marriage of the child's natural parents.[4]  24 I&N Dec. at 547–48.

The respondent argues that he was the legitimated child of his father under Board precedents issued before *Matter of Hines*.  He further asserts that *Hines* has an impermissible retroactive effect as applied to his case because it embodies a different understanding of the "legitimation" concept from that which was in effect at the time of his father's naturalization.  *See generally SEC v. Chenery Corp*., 332 U.S. 194, 203 (1947) (stating that the retroactivity resulting from a new principle "announced by a court or by an administrative agency . . . must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles").

## II.  ANALYSIS

The respondent qualified as a legitimated child of his father for visa preference purposes under *Matter of Clahar*, 18 I&N Dec. at 2–3.  In that case, we held that the JSCA eliminated the legal disabilities between legitimate and illegitimate children by operation of law and conferred equality of rights.  We also acknowledged the existence of the Legitimation Act of Jamaica, which required the parents to marry for an out-of-wedlock child to be legitimated, and concluded that the illegitimate status distinction was consequently not eliminated by law.  Nevertheless, we found that the JSCA, which conferred equality of rights, was determinative for according visa petition benefits.

In addition, we credited a memorandum from the Jamaican Ministry of Justice, which represented that under the JSCA, "the legal duties and obligations of a father towards a child born out of wedlock are in all

---

[4]   Former section 321(a) of the Act provided, in pertinent part, as follows:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>     . . .
>     (3) The naturalization of the . . . mother if the child was born out of wedlock and *the paternity of the child has not been established by legitimation . . . .*

(Emphasis added.)  This statute was repealed and replaced by section 320(a) of the Act, effective February 27, 2001.  *See* Child Citizenship Act of 2000, Pub. L. No. 106-395, §§ 101(a), 103(a), 104, 114 Stat. 1631−33.  However, the new citizenship provisions were not retroactive, so former section 321(a) continues to apply to any derivative citizenship claim made by an individual who turned 18 before the statute's effective date.  *See Matter of Rodriguez-Tejedor*, 23 I&N Dec. at 162.

significant respects the same as those of a child born in wedlock." *Id.* at 2 (internal quotation marks omitted). As we noted, however, that memorandum also acknowledged that Jamaican law retained some "minor statutory distinctions" between children based on the marital status of their parents in order "to minimize the problems associated with determining rights and status in an area where difficulties may arise in identifying the natural father of a child." *Id.*

In a similar visa petition case, we addressed the Guyanese Children Born Out of Wedlock (Removal of Discrimination) Act of 1983, which effectively eliminated the legal distinction between children born in wedlock and those born out of wedlock. *Matter of Goorahoo*, 20 I&N Dec. at 783−85. We held that for purposes of visa preference classification, children born out of wedlock in Guyana after the law's May 18, 1983, effective date are deemed legitimate and those under the age of 18 years prior to that date are legitimated children. Unlike the JSCA, the Guyanese law did not contain any broad provision purporting to eliminate all legal distinctions between children based on the marital status of their parents; rather, it simply amended preexisting Guyanese laws on an individual basis. *Id.* at 783. Nevertheless, based on an analysis conducted by the Library of Congress, we concluded that children born out of wedlock in Guyana have rights equal to those of children born in wedlock. *Id.* at 784.

Subsequently, in the context of determining derivative citizenship, we interpreted former section 321(a)(3) of the Act, which provided in relevant part that a child born out of wedlock to alien parents could derive United States citizenship through the naturalization of his or her mother, but only if "the paternity of the child has not been established by legitimation." *See Matter of Hines*, 24 I&N Dec. at 546; *Matter of Rowe*, 23 I&N Dec. at 963. Considering the apparent legislative purpose of that language, we held that individuals born out of wedlock in Jamaica and Guyana could derive United States citizenship through the naturalization of their mothers so long as they could prove that their fathers had *not* confirmed or established their paternity "by legitimation" under the domestic relations laws of those countries.[5] *See Matter of Hines*, 24 I&N Dec. at 547–48; *Matter of Rowe*, 23 I&N Dec. at 967. In each case, we

---

[5] Although there is little legislative history regarding former section 321(a)(3), it has generally been understood that the language requiring a putative United States citizen to prove that his or her paternity has not been established by legitimation was devised by Congress as a means of safeguarding the parental rights of alien fathers. *See, e.g.*, *Brandao v. Att'y Gen. of U.S.*, 654 F.3d 427, 429–30 & n.5 (3d Cir. 2011); *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1066 (9th Cir. 2003); *Wedderburn v. INS*, 215 F.3d 795, 800 (7th Cir. 2000).

concluded that where a jurisdiction requires an affirmative act to legitimate an out-of-wedlock child, paternity is not established without the requisite act, even if the jurisdiction has enacted a law to place children on equal footing without regard to the circumstances of their birth.

Although Jamaica and Guyana enacted laws that effectively eliminated the legal distinction between children born in wedlock and those born out of wedlock, both countries retained a formal means of legitimating—the marriage of the biological parents. We therefore held that for derivative citizenship purposes, paternity could be established by legitimation only through the affirmative act of parental marriage. Thus, the respondents in *Hines* and *Rowe* could derive citizenship from the naturalization of their mothers under former section 321(a)(3) because paternity had not been established by the marriage of their parents, which was the only means of legitimation. We continue to espouse that holding and believe it embodies the correct understanding of former section 321(a)(3).

Nevertheless, we find it necessary to recede from *Matter of Hines* and *Matter of Rowe* to the extent they addressed matters beyond the scope of former section 321(a)(3) and overruled *Matter of Clahar* and *Matter of Goorahoo*, respectively. In *Hines* and *Rowe*, we declared that the term "legitimation" should not have two separate meanings within the Act, regardless of variations in statutory context. Thus, we found that our interpretation of the term under section 321(a)(3), which makes the establishment of "paternity . . . by legitimation" a barrier to citizenship, was controlling in all other statutory contexts, including those that make proof of legitimation a prerequisite for eligibility for a benefit, such as visa preference classification. *See Matter of Hines*, 24 I&N Dec. at 548; *Matter of Rowe*, 23 I&N Dec. at 967. Although neither *Hines* nor *Rowe* elucidates the Board's reasons for concluding that "legitimation" must be interpreted uniformly throughout the Act, we apparently understood it to be required by the Supreme Court's decision in *Clark v. Martinez*, 543 U.S. 371 (2005).

In that case, the Court held that a single statutory phrase cannot have different meanings in different factual contexts. *Clark v. Martinez*, 543 U.S. at 386 (rejecting "the dangerous principle that judges can give the same statutory text different meanings in different cases"). Thus, *Clark* would forbid us from giving the statutory phrase "paternity . . . has not been established by legitimation" one meaning for people born in Jamaica and another for those born in Guyana. *Id.* at 378 ("To give [the] same words a different meaning . . . would be to invent a statute rather than interpret one.").

In *Hines* and *Rowe*, however, we read *Clark* much more broadly, as if it required us to interpret the term "legitimation" identically throughout the Act, regardless of variations in statutory context. That understanding was

erroneous and conflicts with the well-settled rule that "[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (alteration in original) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)) (internal quotation marks omitted). In short, "[a] given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies," even if the term is statutorily defined. *Id.* (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)). Therefore, in finding that *Clark v. Martinez* required us to interpret the concepts of "legitimation" in section 101(c) of the Act and "paternity . . . established by legitimation" in former section 321(a)(3) as the same, we misconstrued the Supreme Court's decision.

Upon further consideration, we conclude that the interpretation of "paternity . . . established by legitimation" that we have adopted for purposes of former section 321(a)(3)—which requires an affirmative act by the father in accordance with the law of the jurisdiction—cannot properly be extended to the interpretation of "legitimation" for purposes of the definition of a "child" in sections 101(b)(1) and (c)(1) of the Act.[6]

To illustrate this point, we consider the language of former section 321(a)(3) itself, which requires a person born out of wedlock to prove both that he was a "child" when his mother naturalized and that his "paternity . . . ha[d] not been established by legitimation" at that time. Clearly, if "legitimation" has the same meaning in section 101(c)(1) as "paternity . . . established by legitimation" does in section 321(a)(3), then the statutes are in conflict. A person born out of wedlock seeking to qualify as a "child" has to prove "legitimation," yet if he did so, he would be unable to prove the absence of "paternity . . . established by legitimation" required by section 321(a)(3). Conversely, anyone who proves that his "paternity . . . has not been established by legitimation" under section 321(a)(3) would accordingly be unable to qualify as a "child." The necessary corollary of this paradox is that the term "legitimation" in section 101(c)(1) must mean something different from what "paternity . . . established by legitimation" means in former section 321(a)(3).

---

[6] Consequently, we withdraw from *Hines* and *Rowe* to the extent that they require "legitimation" to be given the same meaning throughout the Act. We also conclude that *Hines* and *Rowe* improperly overruled *Clahar* and *Goorahoo*, which were visa petition cases that interpreted the "legitimation" concept for purposes of the definition of a "child" in section 101(b)(1) of the Act. Accordingly, our holdings in *Clahar* and *Goorahoo* are reinstated and reaffirmed.

The remaining question is what "legitimation" in section 101(c)(1) means. Given this section's express provision that "legitimation" is determined by the law of the child's (or his father's) residence or domicile, any satisfactory answer to that question is complicated by the growing consensus—both in the United States and abroad—against labeling children "legitimate" and "illegitimate" by virtue of the marital status of their parents. In recent decades, many countries have legally marginalized the legitimation concept, retaining some of its features for purposes of settling inheritance disputes but enacting legislation that otherwise places the children of unmarried parents on the same legal footing as those born to married couples.[7] Any coherent understanding of legitimation as a stand-alone concept—rather than as a mechanism for establishing paternity, as in former section 321(a)(3)—must take this reality into account.[8]

In light of the foregoing, we interpret section 101(c)(1) of the Act to mean that a person born abroad to unmarried parents can be a "child" for purposes of section 320(a) if he or she is otherwise eligible and was born in a country or State that had eliminated legal distinctions between children based on the marital status of their parents or had a residence or domicile in such a country or State (including a State within the United States).

---

[7] *See, e.g.*, *Iracheta v. Holder*, 730 F.3d 419, 425 (5th Cir. 2013) (Tamaulipas, Mexico); *Matter of Goorahoo*, 20 I&N Dec. at 782 (Guyana); *Matter of Hernandez*, 19 I&N Dec. 14, 16 (BIA 1983) (Colombia); *Matter of Clarke*, 18 I&N Dec. 369, 371–72 (BIA 1983) (Barbados); *Matter of Mesias*, 18 I&N Dec. 298, 299 (BIA 1982) (Haiti); *Matter of Espinoza*, 17 I&N Dec. 522, 523–24 (BIA 1980) (Bolivia); *Matter of Sanchez*, 16 I&N Dec. 671, 672 (BIA 1979) (Honduras); *Matter of Maloney*, 16 I&N Dec. 650, 651–52 (BIA 1978) (Panama); *Matter of Wong*, 16 I&N Dec. 646, 648 (BIA 1978) (China); *Matter of G-*, 9 I&N Dec. 518, 519 (BIA 1961) (Hungary); *Matter of K-*, 8 I&N Dec. 73, 75–76 (1958) (Poland). Similarly, a number of States within the United States have enacted statutes placing the children of unwed parents on equal legal footing with those born to married couples. *See, e.g.*, Ariz. Rev. Stat. Ann. § 25-1401 (2014) (West); Cal. Fam. Code § 7602 (West 2014); Mass. Gen. Laws Ann., ch. 209C, § 1 (West 2014); N.J. Stat. Ann. § 9:17-40 (West 2014); Or. Rev. Stat. Ann. § 109.060 (West 2014); 23 Pa. Cons. Stat. Ann. § 5102(a) (West 2014).

[8] By tying the meaning of "legitimation" to the requirements of the law of the child's residence or domicile (or that of the father), Congress anticipated that the meaning of the term would vary depending upon (1) the law in the country or State of residence or domicile and (2) the child's date of birth. "Legitimation" is thus an evolving, rather than a fixed, concept. *See, e.g.*, *Matter of Campuzano*, 18 I&N Dec. 390, 392 (BIA 1983) (holding that whether a child born out of wedlock in Ecuador qualifies as a "legitimate" child in visa petition proceedings depends on whether he was born before or after the August 7, 1970, change of Ecuadorean law); *cf. Matter of Gomez*, 16 I&N Dec. 72 (BIA 1976) (governing questions of legitimation of persons born out of wedlock in Ecuador before the August 7, 1970, change of law).

Applying this rule to the facts of this case, we conclude that the respondent is his father's "child" within the meaning of sections 101(c)(1) and 320(a) of the Act.  There is no dispute that the respondent is the biological child of the man through whom he seeks to derive United States citizenship or that he was born in Jamaica after the 1976 effective date of the JSCA.  Further, the record contains no evidence to suggest that the respondent was not in his father's legal custody at the time of his birth. *See* 8 C.F.R. § 322.1 (2014) (establishing a rebuttable presumption that a biological parent has legal custody of his or her child); *see also Matter of Rivers*, 17 I&N Dec. 419 (BIA 1980).  Accordingly, the respondent's appeal will be sustained and the removal proceedings against him will be terminated.

**ORDER:**  The appeal is sustained and the removal proceedings are terminated.