# In re Lawrence ROWE, Respondent

File A41 064 398 - Napanoch

*Decided June 29, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under the laws of Guyana, the sole means of legitimation of a child born out of wedlock is the marriage of the child's natural parents. *Matter of Goorahoo*, 20 I&N Dec. 782 (BIA 1994), overruled.

(2) Where the respondent was born out of wedlock in Guyana and his natural parents were never married, his paternity has not been established by legitimation, so he is not ineligible to obtain derivative citizenship under former section 321(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a)(3) (1994).

FOR RESPONDENT: Thomas J. Mills, Esquire, New York, New York

BEFORE: Board Panel: COLE, FILPPU, and PAULEY, Board Members.

COLE, Board Member:

The respondent has appealed the Immigration Judge's May 31, 2005, decision denying his motion to terminate removal proceedings based on his claim of derivative citizenship under former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (1994). The appeal will be sustained, and the proceedings will be terminated.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a 30-year-old native and citizen of Guyana who was born out of wedlock on September 19, 1975. The names of the respondent's mother and father appear on his birth certificate, but his parents never married. The respondent was admitted to the United States as a lawful permanent resident on August 16, 1986.

On April 20, 1998, the respondent was convicted of the offense of attempted criminal sale of a controlled substance in the third degree in New York. In

---

[1] We acknowledge receipt of the respondent's motion to expedite and have done so to the extent possible consistent with the regulation applicable to the issuance of precedent decisions by the Board. 8 C.F.R. § 1003.1(g) (2006).

February 2005, removal proceedings were initiated, during which the respondent claimed that he derived United States citizenship under former section 321(a) of the Act. The Immigration Judge determined that because the respondent was legitimated under the laws of Guyana, he could not meet the requirements of former section 321(a) of the Act. The Immigration Judge therefore concluded that the respondent failed to sustain his burden of establishing his derivative citizenship.

On appeal, the respondent argues that this case is governed by the reasoning in *Gorsira v. Loy*, 357 F. Supp. 2d 453, 458-64 (D. Conn. 2005), *reconsidered on other grounds sub nom. Gorsira v. Chertoff*, 364 F. Supp. 2d 230 (D. Conn. 2005). He therefore asserts that he was not legitimated under the laws of Guyana and that he qualifies as a derivative citizen of the United States. The Department of Homeland Security ("DHS") did not file a brief on appeal.

## II. ISSUE

The issue in this case is whether the respondent is entitled to derivative citizenship because his paternity has not been established by legitimation under Guyanese law, as required by former section 321(a)(3) of the Act.

## III. ANALYSIS

The starting point of our analysis is former section 321(a) of the Act,[2] which provided in pertinent part as follows:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents *or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation;* and if

---

[2] Section 321 of the Act was repealed by the Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a), 114 Stat. 1631, 1632 ("CCA"). It appears that if the CCA applied retroactively, the respondent would have attained citizenship under section 320 of the Act, 8 U.S.C. § 1431 (2000), which was also amended by the CCA. CCA § 101(a), 114 Stat. at 1631. But that section grants automatic citizenship only to those children who were under the age of 18, and who met the other requisite criteria, on February 27, 2001, the effective date of the CCA. *See* CCA § 104, 114 Stat. at 1633; *see also Drakes v. Ashcroft*, 323 F.3d 189, 191 (2d Cir. 2003); *Matter of Rodriquez-Tejedor*, 23 I&N Dec. 153 (BIA 2001). Because the respondent was over the age of 18 on February 27, 2001, section 320 has no application here, and he must rely on the now-repealed section 321.

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

Former section 321(a) of the Act (emphasis added).

The respondent does not dispute that he was born in Guyana, and that he must therefore adduce evidence to prove that he is a United States citizen. It is undisputed that the respondent was born out of wedlock and that both his admission to the United States as a lawful permanent resident and his mother's naturalization occurred prior to his 18th birthday, so he meets the conditions set forth in sections 321(a)(4) and (5) of the Act. He therefore qualifies as a citizen if he meets the requirements of either clause (1), (2), or (3).

Clause (1) does not apply here because the record only indicates that the respondent's mother has been naturalized. The respondent does not contend that clause (2) has any application to his case. He does, however, assert that he acquired derivative citizenship under section 321(a)(3) of the Act because he was born out of wedlock and his paternity was not established by legitimation. Therefore, the dispositive question on appeal is whether the respondent has proved that his paternity has not been established by legitimation under the law of Guyana.

In *Matter of Gouveia*, 13 I&N Dec. 604 (BIA 1970), a case involving a visa petition proceeding, we considered whether acknowledgment of paternity constituted legitimation under Guyanese law. The petitioner, who was seeking immediate relative status for his son, contended that he had legitimated his child for purposes of section 101(b)(1)(C) of the Act, 8 U.S.C. § 1101(b)(1)(C) (1970), because his son was born in Guyana, he acknowledged paternity of the child, and he was named on the beneficiary's birth certificate as the father. In our decision, we examined the laws of Guyana, including the Legitimacy Ordinance of British Guiana and the Registration of Births and Deaths Ordinance of October 1, 1968.[3]

The Legitimacy Ordinance provided that

where the parents of an illegitimate person marry or have married one another, whether before or after the commencement of this Ordinance, the marriage did or shall, if the father of the illegitimate person was or is at the date of the marriage

---

[3]  We note that Guyana became an independent country in 1966 and that the Legitimacy Ordinance under the laws of British Guiana subsequently became known as the Legitimacy Act under the laws of Guyana. *See Gorsira v. Loy*, *supra*, at 494 app. (Law Library of Congress memorandum).

domiciled in British Guiana, render that person, if he is or was living, legitimate from the date of marriage.

Legitimacy Ordinance, Laws of British Guiana, vol. IV, ch. 165, § 3(1) (1932), *quoted in Matter of Gouveia*, *supra*, at 605.  The Registration of Births and Deaths Ordinance permitted entry of the father's name on the birth certificate if he acknowledged himself to be the father and the parents made a joint request for such inclusion.  We held that acknowledgment of a child born out of wedlock did not, however, confer legitimate status on the child because, under the laws of Guyana, the legitimation of a child required the marriage of the father and mother.

In *Matter of Goorahoo*, 20 I&N Dec. 782 (BIA 1994), we were asked to clarify our decision in *Matter of Gouveia*, *supra*, in light of the Guyana Children Born Out of Wedlock (Removal of Discrimination) Act 1983 (effective May 18, 1983) ("Removal of Discrimination Act").  In reaching our decision, we relied on a memorandum opinion from a senior legal specialist at the Law Library of Congress, which explained that the Removal of Discrimination Act amended five preexisting laws in the following ways: it replaced the terms "bastard" in the Evidence Act and "illegitimate person" in the Legitimacy Act with the phrase "child born out of wedlock"; it broadened the Maintenance Act to benefit a child born to unmarried parents; it amended the Civil Law Act to allow a child born out of wedlock to inherit from the father's intestate estate; and it amended the Infants Act so that courts may award custody of a child born out of wedlock to the father.  *Matter of Goorahoo*, *supra*, at 783.

According to the memorandum, the purpose of the Removal of Discrimination Act was to eliminate discrimination against children born out of wedlock.  *Id.*  The memorandum therefore concluded that children born out of wedlock in Guyana have rights equal to those of children born in wedlock. *Id*. at 784.  Based on the memorandum, we held that pursuant to the Removal of Discrimination Act, Guyana eliminated all legal distinctions between legitimate and illegitimate children.  We also determined that all children born out of wedlock after May 18, 1983, are considered legitimate and that those under the age of 18 prior to that date are deemed to be the legitimated offspring of their natural parents.  *Id*. at 785.

Deeming a child legitimate or legitimated generally benefits the child for purposes of preference classification.  However, a determination that accords a benefit in visa petition proceedings may become a detriment under former section 321(a)(3) of the Act because it requires an individual to show that his paternity was *not* established by legitimation.  Thus, where we have found that all legal distinctions between children born in and out of wedlock have been eliminated and that all children are accorded equal treatment under the laws,

a child is deemed legitimate or legitimated for all purposes and must therefore accept the concomitant benefits and detriments of the application of the law. *See Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981). For this reason, the respondent must be deemed to be to have been legitimated under our holding in *Matter of Goorahoo*, *supra*, unless we find that our decision was in error.

The respondent contends that this case is not governed by *Matter of Goorahoo*, *supra*, and that the issue before us has been thoroughly addressed by the United States District Court for the District of Connecticut in *Gorsira v. Loy*, *supra*. In *Gorsira*, the district court conducted a comprehensive examination of Guyana's Removal of Discrimination Act, the Infancy Act, and the Legitimacy Act, as well as the Law Library of Congress memorandum that we had relied on in *Goorahoo*.[4] The court held that "the Legitimacy Act continued to provide that marriage of the child's parents was the sole means of legitimation under Guyanese law" and that the Removal of Discrimination Act did not "equate recognition of paternity with legitimation." *Gorsira v. Loy*, *supra*, at 463-64.

The court first examined our holding in *Matter of Goorahoo*, *supra*, that Guyana has eliminated all legal distinctions between legitimate and illegitimate children and concluded that it was overly broad and unnecessary to our decision. *Gorsira v. Loy*, *supra*, at 461. In reaching this conclusion, the court observed that the Removal of Discrimination Act eliminated many existing legal distinctions between legitimate and illegitimate children by replacing the term "illegitimate" with "born out of wedlock" in several statutes, and it amended particular acts to remove discriminatory provisions. The court held, however, that the Removal of Discrimination Act did not include "any broad provisions eliminating all distinctions between illegitimate and legitimate children (or between children born in wedlock and out of wedlock)" and noted that "the Law Library of Congress memorandum concluded that the Act 'does not attempt to generally abolish the legal distinction between legitimate and illegitimate children.'" *Id.* (quoting Law Library of Congress memorandum). Emphasizing that one significant distinction remained after the enactment of the Removal of Discrimination Act, i.e., that "a child born out of wedlock could only be legitimated through the subsequent marriage of his parents," the court concluded that the Legitimacy Act was not amended to provide an alternative means of legitimation. *Id.* at 461-62.

Upon review of the laws of Guyana and the Law Library of Congress legal memorandum attached to *Gorsira v. Loy*, we concur with the district court's

---

[4] The Law Library of Congress memorandum was originally prepared in 1990 and was updated in 2005. The 2005 updated memorandum is attached to the opinion in *Gorsira v. Loy*, *supra*.

reasoning that legitimation occurs under Guyanese law only when the natural parents marry. The Removal of Discrimination Act did not expressly override or amend the Legitimacy Act, which provides that the marriage of a child's parents is the sole means of legitimation under Guyanese law. Moreover, the Law Library of Congress memorandum does not support the conclusion that all children, whether or not legitimate, are to be accorded equal treatment for all purposes. Therefore, we agree with the district court that under Guyanese law, a child born out of wedlock may only be legitimated through the subsequent marriage of his parents.

We note that the court distinguished *Matter of Goorahoo*, *supra*, in that our decision did not consider the effect of the Removal of Discrimination Act on claims involving former section 321(a)(3) of the Act. As the court explained, *Matter of Goorahoo* involved visa petition proceedings, which determine whether a person qualifies as a "child" under section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (2000), in furtherance of the goal of family reunification. *Gorsira v. Loy*, *supra*, at 462-64. By contrast, *Gorsira* involved the derivative citizenship statute at former section 321(a)(3) of the Act, which reflects a different goal: the protection of parental rights.

The use of the term "legitimation" in former section 321(a)(3) may not technically be the same as that in section 101(b)(1), which we addressed in *Matter of Goorahoo*, *supra*, when we considered the definition of a "child." However, we do not find it appropriate to distinguish its meaning in this case from that in *Goorahoo* simply because it is used in different provisions of the Act. *Cf. Clark v. Martinez*, 543 U.S. 371 (2005). Therefore, we find that *Matter of Goorahoo*, *supra*, must be overruled.

We hold that the Legitimacy Act continues to provide that the marriage of the parents of a child born out of wedlock is the sole means of legitimation under Guyanese law. Because the respondent's parents never married, we agree that his paternity was not established through legitimation. Consequently, we hold that the respondent derived United States citizenship under former section 321(a)(3) upon the naturalization of his mother. Accordingly, the respondent's appeal will be sustained and the proceedings against him will be terminated.

**ORDER:** The appeal is sustained and the removal proceedings are terminated.