17-3888
*United States v. Lewis*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand nineteen.

Present:
>       ROBERT A. KATZMANN,
>               *Chief Judge*,
>       DEBRA ANN LIVINGSTON,
>       CHRISTOPHER F. DRONEY,
>               *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

    *Appellee*,

       v.                                                          No. 17-3888

LEON IRA LEWIS, AKA MARK CARTER,

    *Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellant: | COLLEEN P. CASSIDY, Federal Defenders of New York, Inc. Appeals Bureau, New York, NY. |
| For Appellee: | KAITLIN T. FARRELL, David C. James, Assistant United States Attorneys, *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the lower court are **AFFIRMED**.

Defendant-appellant Leon Lewis appeals from a judgment of conviction entered on November 22, 2017 by the United States District Court for the Eastern District of New York (Amon, *J.*). Following trial, Lewis was convicted of illegally reentering the United States after deportation following conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Facts and Procedural History

Lewis was born out of wedlock in Guyana in 1964 and legally entered the United States in the early 1980s. In late 1995, Lewis was convicted of conspiracy to distribute cocaine base and to import cocaine. He served 140 months in prison and was deported to Guyana upon his release. In August 2016, Lewis was again arrested in the United States and charged with illegal reentry.

In February 2017, Lewis filed a motion to adjourn the trial date, informing the court that he planned to argue that he acquired citizenship from his father and asking for more time to investigate this defense.[1]

---

[1] "Acquired" citizenship is automatically obtained from a parent at birth while "derivative" citizenship is transmitted from parent to child after the child is born. *Jaen v. Sessions*, 899 F.3d 182, 186 (2d Cir. 2018).

The law in effect at the time of a person's birth governs that person's claim of acquired citizenship. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1687 & nn. 2-3 (2017). Lewis's citizenship claim is therefore governed by Sections 301(a)(7) and 309(a) of the 1952 version of the Immigration and Nationality Act (the "1952 INA"). Immigration and Nationality Act, Pub. L. No. 82-414, §§ 301(a)(7), 309(a), 66 Stat. 163, 236, 238 (1952) (formerly codified at 8 U.S.C. §§ 1401(a)(7), 1409(a)). Under former Section 301(a)(7), children born abroad acquire citizenship at birth from a parent if that parent was a United States citizen at the time of the child's birth and had lived in the United States or its outlying possessions for a certain period. 1952 INA § 301(a)(7). Section 309(a) imposes an additional requirement on children, like Lewis, who were born to unmarried parents and seek to acquire citizenship from the father: such children only acquire citizenship if "the paternity of such child is established while such child is under the age of twenty-one years by legitimation." 1952 INA § 309(a). Lewis intended to prove that his father was the late Leroy Hughue, who was a U.S. citizen and met the statutory residency requirements, and argued that Guyana's Children Born out of Wedlock (Removal of Discrimination Act) of 1983 (the "Removal of Discrimination Act") legitimated him before he turned 21.

The Government moved in limine to exclude this argument, contending, among other things, that even if the court were to accept Lewis's factual allegations, he still could not have acquired citizenship from Hughue under former Section 309(a). The Government conceded that Guyana's Removal of Discrimination Act eliminated certain laws that discriminated against children born out of wedlock and therefore has been interpreted by the Bureau of Immigration Appeals ("BIA") as having "legitimated" all children in Guyana for purposes of the definition of a "child" in Sections 101(b)(1) and (c)(1) of the INA. *See Matter of Cross*, 26 I. & N. Dec. 485 (B.I.A. 2015); *see also Lau v. Kiley*, 563 F.2d 543, 550 (2d Cir. 1977) (holding that China issued

3

a "legislative grant of legitimacy" when it passed a general legitimation statute); *Matter of Reyes*, 17 I. & N. Dec. 512, 514 (B.I.A. 1980) ("legitimation" means "the act of putting an illegitimate child in the position or state of a legitimate child before the law by legal means").[2] However, according to the Government, the Removal of Discrimination Act did not "establish" Lewis's "paternity by legitimation," as required by former Section 309(a), because Guyana has not repealed its "Legitimacy Act," under which a child born to unmarried parents is only formally legitimated by the parents' subsequent marriage, and Lewis's parents never married.

The district court agreed with the Government, granted the motion, and precluded Lewis from introducing evidence about Hughue's citizenship. The district court also instructed the jury that, as a matter of law, Lewis had not established that he had acquired American citizenship through his father. Lewis was convicted and sentenced to 63 months' imprisonment and three years of supervised release. This timely appeal followed.

## II.    Standard of Review

The question on appeal is whether Guyana's Removal of Discrimination Act "establishes paternity by legitimation" under Section 309(a) of the 1952 INA, even when the formal legitimation process prescribed by the Legitimacy Act is unfulfilled. This is a question of law, so we review the district court's decision *de novo*. *Sessions*, 899 F.3d 182, 185 (2d Cir. 2018). However, because the INA does not define the phrase "establish paternity by legitimation," we defer to the BIA's interpretation, unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *see Florez v. Holder*, 779 F.3d 207, 211 (2d Cir. 2015).

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

4

**III.** *Matter of Cross*

The BIA has not opined on the meaning of the phrase "establish paternity by legitimation" under the older Section 309(a) at issue here, but it has interpreted identical and similar phrases in other provisions of the same statute, most recently in *Matter of Cross*.

The petitioner in *Cross* was born to unwed parents in Jamaica and came to the United States with his father, who became a citizen by naturalization in 2001. *Cross*, 26 I. & N. Dec. at 486. Cross argued that he automatically derived citizenship from his father on that date. Under the version of the INA applicable to Cross, he had to show, among other things, that he was his father's "child," as defined in Section 101(c)(1) of the INA. *Id.* at 485. To qualify under that provision, Cross had to be "legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile." *Id.* at 487 (quoting 8 U.S.C. § 1101(c)(1)); *see* 8 U.S.C. § 1431(a). Jamaica, like Guyana, had passed a law according equal treatment to all children regardless of whether their parents were married, which Cross claimed "legitimated" him. *Cross*, 26 I. & N. Dec. at 486. But Jamaica, like Guyana, also retained a law providing that children born out of wedlock could only be "legitimated" by the parents' subsequent marriage. *Id.* at 490.

*Cross* held that a person born abroad to unmarried parents is "legitimated" under Section 101(c)(1) if that person has resided or been domiciled in a jurisdiction "that has eliminated all legal distinctions between children based on the marital status of their parents . . . , irrespective of whether the country or State has prescribed other legal means of legitimation." *Id.* at 485-86. Because Jamaica had a general legitimation statute, Cross was "legitimated" despite the unfulfilled formal process, and so could derive citizenship from his father. *Id.* at 493.

Although it was not directly at issue, *Cross* also addressed former Section 321(a)(3) of the INA, which previously governed when children born abroad to unmarried, alien parents automatically derived citizenship from their naturalizing mother and continues to apply to children whose parents naturalized before its repeal. *Id.* at 489-91. Under former Section 321(a)(3), a child born out of wedlock derived citizenship upon "the naturalization of the mother if the . . . paternity of the child has *not* been established by legitimation." 1952 INA § 321(a)(3) (formerly codified at 8 U.S.C. 1432(a)(3)) (emphasis added). Section 321(a)(3) was designed to "prevent[] the naturalizing parent from usurping the parental rights of the alien parent," who may not want the child to become a citizen of another country. *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1066 (9th Cir. 2003) *as amended* (June 9, 2003); *see Lewis v. Gonzales*, 481 F.3d 125, 131 (2d Cir. 2007) (per curiam); *Wedderburn v. INS*, 215 F.3d 795, 800 (7th Cir. 2000).

The BIA held in *Cross* that, although a general legitimation statute "legitimated" under Section 101(c)(1) even if a formal legitimation process remained, "paternity" was only "established by legitimation" under former Section 321(a)(3) if the requirements of the formal legitimation process were met. *Cross*, 26 I. & N. Dec. at 489-90.

*Cross* partially reversed two prior BIA cases: *Matter of Hines*, 24 I & N Dec. 544 (BIA 2008) and *In re Rowe*, 23 I & N Dec. 962 (BIA 2006). The BIA held in those cases that Jamaica's and Guyana's general legitimation statutes neither "legitimate" nor "establish paternity by legitimation" because both jurisdictions also retained formal legitimation processes. *Hines*, 24 I. & N. Dec. at 547-48; *Rowe*, 23 I. & N. Dec. at 967. *Cross* explained that the *Hines* and *Rowe* panels erroneously believed that they had to "interpret the term 'legitimation' identically throughout the Act, regardless of variations in statutory context," when in fact "[m]ost words have different shades of meaning and consequently may be variously construed." *Cross*, 26 I. &

6

N. Dec. at 490-91 (quoting *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)).

Because of this legal error, the *Hines* and *Rowe* panels wrongly concluded that their

interpretation of "section 321(a)(3), which makes the establishment of 'paternity . . . by

legitimation' a barrier to citizenship, was controlling in all other statutory contexts, including

those that make proof of legitimation a prerequisite for eligibility for a benefit." *Id.* at 490. The

*Cross* panel justified its decision to adopt the broader definition of "legitimation" by pointing to

"the growing consensus—both in the United States and abroad—against labeling children

'legitimate' and 'illegitimate' by virtue of the marital status of their parents." *Id.* at 492. "Any

coherent understanding of legitimation as a stand-alone concept—rather than as a mechanism for

establishing paternity as in former section 321(a)(3)—must take this reality into account." *Id.*

## IV.    Analysis

*Cross* does not directly resolve this case.[3] However, both former Section 309(a) at issue

here and former Section 321(a)(3) discussed in *Cross* use the phrase "establish paternity by

legitimation," and "we presume that the same term has the same meaning when it occurs here

and there in a single statute." *Envtl. Def.*, 549 U.S. at 574. Lewis does not challenge *Cross*'s

---

[3] Both parties argue that it does, each latching onto language that supports its position and ignoring language to the contrary. Lewis notes that *Cross* described *Hines* and *Rowe* as erroneously finding "that our interpretation of the term under section 321(a)(3), which makes the establishment of 'paternity . . . by legitimation' a *barrier* to citizenship, was controlling in all other statutory contexts, *including those that make proof of legitimation a prerequisite for eligibility for a benefit*." *Cross*, 26 I. & N. Dec. at 490 (emphases added). Under former Section 309(a), at issue here, "proof of legitimation" is a "prerequisite for eligibility for a benefit," namely, acquisition of citizenship. The Government, by contrast, points to *Cross*'s distinction between "the concepts of 'legitimation' in section 101(c) of the Act and 'paternity . . . established by legitimation' in former section 321(a)(3)," *id.* at 491, where the former is "a stand-alone concept" and the latter "a mechanism for establishing paternity," *id.* at 492. Section 309(a) also requires that "paternity be established by legitimation," meaning it too is "a mechanism for establishing paternity." Ultimately, *Cross* makes both distinctions and is careful to limit its decision to former Section 321(a)(3).

7

interpretation of former Section 321(a)(3). We therefore start with the presumption that failure to fulfill a formal legitimation process means one's "paternity" is not "established by legitimation" under Section 309(a), even if the jurisdiction has enacted a general legitimation statute.

Admittedly, the presumption of consistent usage "is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.* at 574. But Lewis points to no compelling reason to depart from this norm.

Lewis argues that ascribing the same meaning to "establish paternity by legitimation" here that the BIA gave it in *Cross* would have the irrational result of imposing different and more difficult legitimation requirements for the child of a citizen father acquiring citizenship under former Section 309(a) than for the child of a naturalized father deriving citizenship under current Section 320(a). Current Section 320(a) requires that the child be "legitimated" to derive citizenship from the father, 8 U.S.C. §§ 1101(c)(1), 1431(a), so a general legitimation act suffices. But former Section 309(a) requires that paternity be established by legitimation for a child to acquire citizenship from the father, which means, by the Government's logic, that a general legitimation act would not suffice if there is also a formal legitimation process. According to Lewis, this makes no sense: why would there be different standards, and why would the standard for acquisition of citizenship from a citizen parent be harder than for derivation from a naturalizing parent? To avoid this result, Lewis argues, we should require fulfillment of the formal legitimation process when legitimation (or establishment of paternity by legitimation) is a barrier to an immigration benefit, but should hold a general legitimation statute sufficient when legitimation (or establishment of paternity by legitimation) is a requirement for an immigration benefit.

8

We are not persuaded. First, Lewis compares the *current* provisions controlling the derivation of citizenship with the *former* provisions controlling the acquisition of citizenship. Section 320(a) was passed in 2000. *See* Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631. Former Section 309(a), by contrast, was passed a half-century earlier as part of the original Immigration and Nationality Act in 1952. 1952 INA § 309(a). Moreover, Section 309(a) was revised several times before 2000, including a wholesale revision in 1988. Immigration Technical Corrections Act of 1988, Pub. L. 100-525, § 8(k), 102 Stat. 2609, 2617-18 (1988) (codified at 8 U.S.C. § 1409(a)). It is unsurprising that a law governing derivation of citizenship that was passed in 2000 has a different standard than a law governing acquisition of citizenship that was passed in 1952 and amended in relevant part several times thereafter.

Second, the INA currently requires more rigorous evidence of biological paternity or a meaningful father-child relationship for children seeking to show that they acquired citizenship from their citizen fathers than for children seeking to show that they derived citizenship from their naturalizing fathers. *Cf. Tuan Anh Nguyen v. INS*, 533 U.S. 53, 62, 64-65 (2001) (the INA's legitimation requirements ensure both a biological parent-child relationship and "that the child and citizen parent have some demonstrated opportunity or potential to develop not just a relationship that is recognized, as a formal matter, by the law, but one that consists of the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States"). Under current Section 309(a), children born abroad to unmarried parents seeking to show that they acquired citizenship from their fathers must (1) prove a blood relationship by clear and convincing evidence, (2) prove that the father was a citizen at the time of the child's birth, (3) provide a written agreement from the father to provide financial support for the child, and (4) either be legitimated, have the father acknowledge paternity in writing under oath, or

9

have paternity established by adjudication. 8 U.S.C. § 1409(a). By contrast, to derive citizenship from a naturalizing father, the child just has to be legitimated and in the father's legal and physical custody. 8 U.S.C. §§ 1101(c)(1), 1431(a).

Last, adopting a consistent interpretation of "establish paternity by legitimation" does not mean that former Section 309(a) has a less demanding standard than current Section 320(a). Under former Section 309(a), a child's paternity must be established by legitimation. Under Guyana's Legitimacy Act, that means the child's parents must have married. Under current Section 320(a), to automatically derive citizenship from a naturalizing father, the child must not only be legitimated, but also in the father's "legal and physical custody." 8 U.S.C. § 1431(a)(3). This is a different proxy for a father-child relationship, but it is not necessarily more demanding.

Lewis has not explained why the phrase "establish paternity by legitimation" should mean something different under former Section 309(a) than it does under former Section 321(a)(3), nor has he pointed to any textual or historical support for the proposition that "legitimation" means one thing when it would provide an immigration benefit and another when it is an obstacle. We therefore affirm and hold that a general legitimation statute does not "establish paternity by legitimation" under former Section 309(a) of the 1952 INA if that jurisdiction also retains a formal, legal legitimation process.[4]

---

[4] We do not here decide whether, in the absence of a formal legitimation process, a general legitimation statute alone suffices to "establish paternity by legitimation," under this or any other provision of the INA. *Cf. Anderson v. Holder*, 673 F.3d 1089, 1102 (9th Cir. 2012); *Brandao v. Attorney Gen. of U.S.*, 654 F.3d 427, 430 (3d Cir. 2011).

10

We have considered all of Lewis's contentions on appeal and have found in them no basis for reversal. For the foregoing reasons, the orders of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk